# COOLIDGE & McCLAINE *v.* FORWARD AND HENEKY.

ADVERSE CLAIM—POSSESSION.—To maintain a suit in equity under section 500 of the code of civil procedure for the determination of an adverse claim, estate or interest, actual possession of the property affected by such claim, by the plaintiff, at the commencement of the suit, is essential.

FRAUDULENT CONVEYANCE —EXECUTION SALE.—The ordinary jurisdiction of courts of equity, unaided by positive statute, does not extend to the trial of disputed legal titles to realty, under ordinary circumstances; therefore, a court of this character in the exercise of such ordinary jurisdiction only, will not enjoin an execution creditor from selling any interest his debtor may have in real property previously conveyed away by him to a third party, but which conveyance the creditor in good faith, and not without reasonable grounds, deems to have been fraudulent and proposes to impeach for that reason.

Appeal from Marion County.

*N. B. Knight and John Kelsay,* for appellants.

*Bonham & Ramsey, and Tilmon Ford,* for respondents.

By the Court, Watson, C. J.:

This was a suit to enjoin a sheriff's sale of real property situated in Marion county, and alleged to belong to the respondents, upon an execution against the property of a third party named Jennings Smith, issued upon a judgment recovered against Smith by the appellant, Heneky, in the circuit court for said county.

The grounds upon which the relief by injunction is claimed are that the sale, if permitted, will cloud the title of the respondents to the property and produce irreparable injury. The complaint states title in Smith on October 12, 1881; a conveyance on that day by him and wife to the respondents for the consideration of $12,000 by them paid to said Smith; and they "have ever since been and now are the owners in fee of said premises, and said deed was duly recorded in records of deeds of said county on the 14th day of October, 1881." It also states the recovery of Heneky's judgment against Smith for the sum of $4,000 damages, and costs in the additional sum of $214 05 in said circuit court on March 1, 1882, "in an action then pending in said court;" the issuance of the execution thereon to the appellant, Forward, sheriff of said county, its levy upon said property, and the advertisement thereof for sale, and that said sheriff threatens to, and unless restrained will proceed to sell said property according to such advertisement. The case comes here on appeal from the judgment of the circuit court entered, upon its decision overruling a general demurrer filed by the appellants to the complaint.

No possession of the property by the respondents, either by "themselves or by their tenant," is alleged in the complaint.   This omission is fatal to the suit, being considered as having been brought for the purpose of determining an "adverse claim, estate or interest," under section 500 of the code of civil procedure.   The language of this section imports that actual possession was intended, and such has been the uniform construction placed upon similar provisions to be found in the codes of many of the other states.   (*Rico* v. *Spence*, 21 Cal., 504; *Collins* v. *Collins*, 19 Ohio St., 468; *Curtis* v. *Sutter*, 15 Cal., 259; *Wals* v. *Grosvenor*, 31 Wis., 681; *Stark* v. *Starr*, 6 Wall., 402; *Teal* v. *Collins*, 9 Or., 89.)

But the adoption of such statutory provisions as section 500 has never been supposed to have any effect upon the chancery jurisdiction as to cases not within the scope of their operation.   Their purpose is to enlarge, not to impair the ordinary jurisdiction.   We have therefore to determine whether the suit is sustainable upon common law principles in view of the facts alleged in the complaint.   We shall assume that constructive possession, which is all the complaint shows in this case, is sufficient, so far as possession is concerned, to enable a plaintiff to maintain such a suit at common law, and independently of any positive legislation.   For although he may not have actual possession, if the defendant has not nor has interfered in any manner with the possession, how could the plaintiff procure the trial of his title in a court of law?   (*Mitchell and wife* v. *Etter, et al.*, 22 Ark., 178; *Apperson & Co.* v. *Ford, et al.*, 23 *Id.*, 746, per Fairchild, J.)   In the case before us, the respondents rely upon title alone as giving them the right to the aid of equity to prevent a cloud being cast.

If they establish their title and satisfy the court that the

proceeding they seek to have enjoined will, if permitted to go on, result in a cloud upon that title, the case presented in the complaint will be made out.

The complaint shows upon its face that their title is disputed by the appellants, for the latter have levied upon and threaten to sell the property as the property of Jennings Smith the judgment debtor, under execution issued upon the judgment against him. There is no allegation that the appellants are acting in bad faith, or without reasonable grounds, in attempting to satisfy the Heneky judgment by an execution sale of the property as still belonging to the judgment debtor; and only the ordinary case is presented of a judgment creditor affirming that a conveyance by his debtor, prior to the rendition of his judgment, was fraudulent, and seeking to obtain satisfaction of his debt out of such property through regular legal process. Will equity interfere in such a case? Mr. High, in his valuable work on injunctions, lays down the broad doctrine that "a sale of lands under execution which would confer no title upon the purchaser, and whose only effect would be to cloud the title of others, will be enjoined," and cites many authorities as sustaining the proposition. (1 High on Injunctions, 372.) It would seem to result as a logical conclusion from the admission of the jurisdiction, to enjoin in such cases, that equity must have the power to inquire into and determine the facts constituting the foundation of such jurisdiction, *i. e.*, whether the impending sale against which the injunction is asked would or would not confer any title on the purchaser if permitted to take place.

That equity would grant the relief upon an admitted state of facts of this nature, cannot be doubted. For it would be clearly unjustifiable and against conscience to thus acquire the means of annoyance and injury to another without any pos-

sibility of legitimate benefit to one's self. It would amount to fraud. (1 Story's Eq. Jur., 700.) But will equity assume to try the question of title in such cases, when fairly disputed? Not one of the cases cited by Mr. High, which we have been able to examine, supports the affirmative of this question, except where the equity jurisdiction has been aided by statutory provisions similar to our own.

It must be admitted, however, that the reference to these authorities indicates no such distinction between them. If the two leading cases included in the reference, *Pettit* v. *Shepherd*, 5 Paige, 493, and *Pixley* v. *Huggins*, 15 Cal., 127—both of which appear to have been decided without reference to particular statutes—are closely examined, it will be seen that both were tried on their merits, as cases properly in equity, without objection by any party entitled to a trial at law, and that in the former the objection to the jurisdiction, raised for the first time at the final hearing, was overruled distinctly on the ground that it came too late, in the progress of the case, while in the latter the point never was raised or considered at all. And as the execution creditor may himself bring a suit in equity, in the first instance to determine the title of a supposed fraudulent grantee of his debtor, there would seem to be no inconsistency in his submitting to the equity jurisdiction in a suit brought against him to enjoin the sale of property upon his execution, and presenting his case there for a final determination upon the merits. And should he see fit to adopt this course, there can be no reason why he should not be held bound by his election.

But such is not the case here. The appellants have not submitted to the equity jurisdiction nor waived their right to a trial at law. In *Abbott* v. *Allen*, 2 Johns. Ch., 519, Chancellor Kent refused relief by injunction to a purchaser

of lands in undisputed possession, sought on the ground of defect of title, against the payment of a bond given for the unpaid purchase money, or proceedings on a mortgage given to secure the same, there being no allegation of fraud in the sale nor any eviction. In the course of his opinion in the case, the following views are expressed: "The only possible argument against the injunction is that as the plaintiff has covenants to secure his title, the interference of this court is necessary to prevent circuity of action, and that the plaintiff ought not to be compelled to pay the purchase money when by a suit on his covenants he might almost concurrently recover it back again. This argument would apply to every case of mutual and independent covenants, and would prove too much; but the proper answer here is that to sustain the injunction would be assuming the fact of a failure of title before eviction on trial at law, and which this court, as not possessing any direct jurisdiction over legal titles, is not bound or authorized to assume. This court may, perhaps, try title to land when it arises incidentally; but it is understood not to be within its province when the case depends on a single legal title and is brought up directly by the bill. The power is only to be exercised in difficult and complicated cases affording peculiar grounds for equitable interference."

In *Tucker* v. *Kensington*, 47 N. H., 267, the court enjoined the sale of a debtor's exempt homestead, on the ground that if suffered to take place it would give the purchaser an apparent title or claim upon the property injurious to the true owner, and which at the same time it would be against conscience for the purchaser to hold. In further illustration of their views upon the subject, the court say: "In many cases equity would decline to interfere, but leave the parties to their remedies at law. This would ordinarily

be the case where a creditor has levied his execution upon land of his debtor which had been previously conveyed by him, but which the creditor proposed to impeach as fraudulent. If there the creditor acted in good faith, having reason to believe that the previous conveyance was fraudulent and void, he could not be regarded as holding the title thus acquired by the levy against equity and good conscience, and the court would not probably take jurisdiction and undertake to administer this summary remedy, but leave it to be settled at law. If, however, it is apparent that the charge of fraud is merely colorable and groundless, and not in good faith, a court of equity might, in its discretion, interfere and remove a title of that character." In *Winche's Appeal*, 61 Pa. St., 424, it was held that equity would not interfere by injunction in ordinary cases to restrain a judgment creditor from selling on execution whatever interest his debtor might have in real property claimed by a third party. To the same effect is *Sutherland* v. *Harper*, 83 N. C., 200.

Speaking of this class of cases, Mr. Bump says: "In general, however, relief may be had at law as well as in equity, and the determination of the question of fraud cannot be withdrawn from the forum which the creditor selects." (Bump on Fraudulent Conveyances, 518.)

It is apparent that the case at bar depends as completely on a simple legal title * * * brought up directly by the bill as that of *Abbott* v. *Allen*, 2 Johns. Ch., 519, before alluded to. The rule of non-interference by courts of equity in such cases seems very well settled upon the authorities. And the reason for this is plain. The determination of legal titles never pertained to the chancery jurisdiction at common law. It is only where the jurisdiction has been aided by positive statutory enactment that courts of equity

entertain suits involving ordinary legal questions of disputed title, but have not been previously settled by a trial at law. It is not difficult to see that the entire jurisdiction over the settlement of controversies about legal title might, in this indirect manner, be transferred from the proper legal forum to the courts of equity, if every claimant of the legal title might summon every rival claimant before the latter tribunals and have his title adjudicated upon under the pretext of removing a cloud from his own. At common law, then, a party cannot, by simply alleging title in himself, compel a hostile claimant to litigate the issue between them as to title in a court of equity. He must show some other ground of equity jurisdiction—something in the acquirement or retention and use of the rival claim which renders it contrary to equity and good conscience to longer hold or assert it. But where the question is simply, which of the contesting parties has the superior legal title, equity will not interfere. And such in fact is the question which this case presents. Either the respondents obtained the title through their conveyance from Smith of October 12, 1881, or the appellants now have it levied upon under the execution issued upon Heneky's judgment against Smith. Where is the title, is the controlling inquiry, for its determination alone will demonstrate whether or not any cloud exists as respondents allege, when the purchaser at the sheriff's sale, if one shall occur, shall have retained the title or claim so acquired so long or make such use of it as to embarrass or injure the respondents in respect to their ownership of the property in litigation without affording them any opportunity to test the validity of his claims in proceedings at law, then no doubt they may successfully invoke the aid of the courts of equity to adjudicate upon such claims as a cloud upon their title, even under their common law juris-

diction. But to obtain relief upon any other conditions, they must bring themselves within the operation of the statute. That the sheriff's deed upon such sale would constitute a cloud upon the title of the respondents, if the title should prove to be in them, we can hardly doubt. This is the doctrine of *Pixley* v. *Huggins*, 15 Cal., 127, which not only appears to be entirely sound, but to be very generally recognized as correct. In *Moore* v. *Cord*, 14 Wis., 231, however, a somewhat different view seems to have prevailed. It is there supposed that the whole record must be looked at together and the deed of a prior purchaser, regular upon its face, and duly recorded, would render the invalidity of a subsequent deed apparent, and prevent its being considered as a cloud on the title of a prior purchaser. But the record in such a case would only show a *prima facie* title in the prior purchaser. It would not be conclusive in his favor. Facts dehors the record, but still capable of proof, might exist, which would show the first conveyance void and the subsequent one valid. This is not like the case of a conveyance or other instrument void on its face and which no quantity or character of external proof could render valid and effectual.

The case at bar serves well to illustrate this distinction. If the conveyance from Smith and wife to the respondents was fraudulent as to the Heneky judgment, a purchaser at a sheriff's sale thereunder would obtain the full legal title. The record of his sheriff's deed would be notice of his title from the time of the levy of the execution upon the property purchased at the sale. What prudent man would purchase the property from the respondents at its full value under such circumstances? How could they themselves ever feel secure in holding or disposing of the property with such a cloud hanging over it? But we think the rule laid down in

*Pixley* v. *Huggins*, that every deed from the same source, and regular upon the face of the proceedings from which it springs, should be deemed a cloud on the title of the true owner, is the correct one on principle, and that it is fairly sustained by the weight of judicial authority.

But for reasons already given, the decree of the circuit court must be reversed and the suit dismissed; and it is so ordered.