## CROWN POINT MINING CO. v. CRISMON.

[ 65 Pac. 87.]

MINING CLAIM—MARKING BOUNDARIES OF LOCATION.

1. As between prior and subsequent locators of mining ground the boundaries are marked in time if it is done before the subsequent location.

TRIAL—OFFERING DOCUMENTARY EVIDENCE—REFERENCE.

2. In equity cases documentary evidence need not be offered before the referee, but may be first produced at the final hearing: *Baker* v. *Woodward*, 12 Or. 3, cited.

OFFERING DOCUMENTARY EVIDENCE—STATUTES.

3. Laws, 1893, p. 26, providing that on a hearing by a referee all documentary evidence shall be incorporated in his report, does not require all such evidence to be offered before the referee, and a party may put in his documentary evidence on the final hearing, though it had not been offered before the referee.

QUIETING TITLE—POSSESSION.

4. Under Section 504* of Hill's Ann. Laws, a person in possession of real property may maintain a suit to quiet his title against another who is asserting an adverse claim thereto.

---

*NOTE.—At the time this suit was commenced, July 26, 1899, and at the time it was decided, Section 504 of Hill's Ann. Laws, as amended by Laws, 1899, p. 227, was in force, viz.: Any person claiming an interest or estate in real estate not in the actual possession of another may maintain a suit in equity against another who claims an interest or estate therein adverse to him, for the purpose of determining such conflicting or adverse claims, interests, or estates.—REPORTER.

MINES—REVIVAL OF LOST RIGHT—ASSESSMENT WORK.

5. Mining rights forfeited by failure to perform assessment work are revived by doing the required amount of work in any year, if it is done before a relocation.

FORFEITURE OF MINING CLAIM—ASSESSMENT WORK.

6. On the question whether there was a forfeiture of the mining claim in question the court is of opinion that the assessment work was performed, especially in view of the rule that a forfeiture of a claim will be decreed only on clear proof that the law has not been complied with.

From Baker : ROBERT EAKIN, Judge.

Bill by the Crown Point Gold Mining Company against S. C. Crismon and another to determine the title of a mining claim. On January 1, 1889, A. H. Huntington, J. C. Young, and A. Olsen posted a discovery notice on the Crown Point quartz claim in Baker County, and during the following summer marked the boundaries thereof on the ground so that they could be readily traced. Their interest in the claim was subsequently sold and transferred to the plaintiff corporation. On July 1, 1899, the defendants, deeming the mine forfeited on account of failure to perform the annual assessment work required by the statutes of the United States, located the same ground under the name of the "Alice." Their notice of location was recorded on the tenth of July. About the same time the plaintiff's manager, with two men, went out to the mine, and commenced work in opening and developing it. A few days later, and while they were so at work, defendants entered upon the claim, and began to dig and extract ore therefrom, and were so engaged July 26, when this suit was commenced. The plaintiff alleges that at the time of the defendants' entry and of the commencement of the suit it was in possession of the property, and entitled thereto ; that on or about July 10 defendants wrongfully and unlawfully entered upon the claim, and began to dig, excavate, and carry away ore therefrom, which they will continue to do unless restrained, to the great and irreparable injury of the plain-

tiff and the impairment of the estate. A demurrer to the complaint having been overruled, the defendants answered, denying the material allegations thereof, and for an affirmative defense alleging, in substance, that neither the plaintiff nor its predecessors in interest had expended $100, or any other amount, annually, in the improvement or development of the claim, since the year 1891, and that the claim had thereby become forfeited; that by reason thereof it was unoccupied and unappropriated mineral land of the United States, and as such was located by the defendants by posting their location notice upon a vein or lode at the point of discovery, and marking the boundaries on the ground; that thereafter they began to work upon and improve the claim, which work is the act complained of by the plaintiff. The reply put in issue the new matter alleged in the answer. The cause was referred to a referee to take and report the testimony, and upon final hearing a decree was rendered in favor of the plaintiff, from which the defendants appeal.

AFFIRMED.

For appellant there was a brief over the name of *Courtney & Knight*, with an oral argument by *Mr. Hugh E. Courtney*.

For respondent there was a brief over the name of *Smith & Heilner*, with an oral argument by *Mr. William Smith*.

MR. CHIEF JUSTICE BEAN delivered the opinion.

1. It is urged that, because Huntington, Young, and Olsen did not mark the boundaries of the claim on the ground for six months after the posting of their discovery notice, their location is invalid. But a subsequent locator can not object that the first location was not marked

in time, provided it was sufficiently marked before his location: *Jupiter Min. Co.* v. *Bodie Consol. Min. Co.* (C. C.) 11 Fed. 666. Defendants do not contend that they made a location prior to the first day of July, 1899,—long after the location of Huntington and others had been properly marked on the ground,—and hence they are not in a position to take advantage of the delay.

2. It is next insisted that there is no competent proof of the transfer of the possessory rights of Huntington and others to the plaintiff, as the documentary evidence in reference thereto was offered on the trial, and not before the referee. But, as we understand the law, written documents, especially such as are proved by authenticated copies, may be put in evidence on the hearing, and it is not necessary to offer them before a referee, whose duties are confined to taking and reporting the testimony. It was so held in *Baker* v. *Woodward*, 12 Or. 3 (6 Pac. 173).

3. We do not think the rule has been changed by the act of 1893 (Laws, 1893, p. 26). The provisions of such act that all documentary evidence shall be preserved and incorporated in the referee's report were intended to refer to the documentary evidence that might be offered before the referee, and not to require that all such evidence be so offered.

4. It is next contended that the plaintiff's remedy is in ejectment, and not by a suit in equity. The evidence shows, however, and the court below found, that the plaintiff was in actual possession of the claim in controversy at the time of the commencement of the suit, and under section 504 of the statute (Hill's Ann. Laws) it was entitled to resort to a court of equity to determine an adverse claim thereto, and quiet its title.

5.   And, finally, it is contended that the evidence does not support the finding that the plaintiff performed or caused to be performed the annual assessment work upon the claim in 1898, as required by the statute of the United States.   From the time of the location by Huntington and others, up to 1898, more or less work seems to have been done on the claim each year, except in 1893 and 1894.   The evidence as to its amount or character is not very satisfactory; but this is not material, because, if the required annual work was done by plaintiff for the year 1898, its right to the claim would be revived, although chargeable with a previous default: *Justice Min. Co.* v. *Barclay* (C. C.), 82 Fed. 554.

6.   In 1898 one Probasco was employed by the plaintiff to do the assessment work for that year, and the principal question in this case is whether he performed the requisite amount thereof.   There is much testimony concerning the length of time he was at the mine, and the amount and character of his work.   Most of it, however, is given by witnesses who formed their conclusions from an inspection of the mine and their knowledge of Probasco's whereabouts.   Probasco himself testified that he did twenty days' work, with his own tools and appliances, in the upper tunnel, of the reasonable value of $5.00 a day; but he is not able to give any clear idea of how far he extended the tunnel, or the number of hours he worked each day.   Many witnesses were called for the defendants, who gave evidence to the effect that, from the appearance of the mine and the dump and their knowledge of Probasco's employment during the time he was at the mine, he did not do the requisite amount of work.   Two or three testified that they were in the tunnel in 1898, just before Probasco commenced work thereon, and again in July, 1899, and that there was no perceptible

change, except that it had been extended about three feet. There is evidence in the record, however, tending to show that it would have been impossible at that time to determine, by a mere inspection of the tunnel, how much work had been done the year before, on account of the action of the water on its walls. The most reliable testimony upon which to base an intelligent opinion on this point is that of the witness Barbee, who says that in the fall of 1897 he went out to the mine for the express purpose of ascertaining whether the requisite amount of work had been done for that year, and while there measured the upper tunnel by stepping, and that it was in fifty feet at that time. It is admitted, and so testified by the defendants, that in July, 1899, this tunnel was in seventy-one feet. The evidence further shows, and it is not pretended otherwise, that no work was done in it between the time it was measured by Barbee in 1897 and July, 1899, except what was done by Probasco in the fall of 1898; so that, if Barbee's testimony as to the length of the tunnel in 1897 is true (and it is uncontradicted), it must necessarily follow that Probasco drove the tunnel at least twenty feet in 1898. The great weight of the evidence shows that it is worth at least $5.00 a foot to do such work. It would seem, therefore, that the court below was fully justified in finding that the claim was not forfeited, as alleged, on account of a failure to do the requisite assessment work, and especially since "a forfeiture of a mining claim can not be established except upon clear and convincing proof of the failure of the former owner to have work performed or improvements made to the amount required by law": *Hammer* v. *Garfield Min. & M. Co.* 130 U. S. 291 (9 Sup. Ct. 548). The decree is therefore affirmed.                    AFFIRMED.