FULKERSON et al. v. CHISNA MIN. & IMP. CO.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1903.)

No. 873.

1. MOTION FOR NONSUIT—WAIVER OF EXCEPTION.
    An exception to an order overruling a motion for a nonsuit is waived by the subsequent introduction of evidence by defendant.

2. QUIETING TITLE—TITLE TO SUPPORT SUIT—ALASKA CODE.
    In the courts of Alaska, where by statute (Act June 6, 1900, 31 Stat. 333, c. 786) the distinction between actions at law and suits in equity is abolished and a single form of action is provided for, the rule of the federal courts in equity, requiring both the legal and equitable title to support a suit to quiet title, is not applicable.

3. SAME—MINING CLAIMS—POSSESSORY TITLE.
    Under section 475, Code Alaska (Act June 6, 1900, 31 Stat. 410, c. 786), providing that any person in possession of real property may maintain an action of an equitable nature against another who claims an estate or interest therein adverse to him for the purpose of determining such claim, and Rev. St. § 910 [U. S. Comp. St. 1901, p. 679], which provides that no possessory action for the recovery of any mining title shall be affected by the fact that the paramount title to the land is in the United States, but each case shall be adjudged by the law of possession, one in possession of a mining claim in Alaska under a valid location has such title as will support an action to quiet title against an adverse claimant.

Appeal from the District Court of the United States for the First Division of the District of Alaska.

Winn & Shackleford, J. C. Campbell, W. H. Metson, and R. W. Campbell, for appellants.

Alfred Sutro, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This action was brought in the United States District Court for the District of Alaska, Division No. 1, by the appellee as plaintiff, to quiet its alleged title to the Viola placer mining claim, located on the Chisna river, Alaska, and to enjoin the appellants from entering thereon. In its complaint the plaintiff alleges that it is, and that for more than 20 months then last past it and its grantors have been, in the possession and entitled to the possession of the claim, specifically describing it, which is of the value of $100,000 for the gold and other precious metals contained in it; that the defendants claim an estate or interest in the claim adverse to the plaintiff, which estate or interest so claimed is without right, but in pursuance of which the defendants are preparing to enter upon the claim and carry off the gold therefrom. The appellants (defendants below) put in issue the averments of the complaint, and set up in themselves the right to the possession of the claim by reason of a location thereof, to which answer the plaintiff filed a reply, and upon the issues thus made a trial was had before the court and a jury. The jury rendered a general and special verdict in favor of the plaintiff, which verdict was accepted, approved, and adopted by the court as its own, and the court added these further findings, to wit:

"(1) That Frederick Quint, the plaintiff's grantor, entered into the possession of the Viola placer claim and premises described in the complaint on or about the 22d day of July, 1899, then and there making a valid location of said placer claim in accordance with the laws governing the manner of making and appropriating mining locations on mineral lands upon the unclaimed public domain in the district of Alaska. (2) That the said Frederick Quint, plaintiff's grantor, for a valuable consideration, delivered to plaintiff the possession of the said Viola placer mining claim, under and by the written contract with plaintiff dated January 8, 1900, and plaintiff has ever since remained in the possession of the same, or the greater part thereof, and is lawfully in the possession of the same, and entitled to hold said placer claim as against the said defendants and each of them, or others holding under them or each of them."

A decree was accordingly entered in favor of the plaintiff, from which the defendants brought the present appeal.

During the trial the court admitted in evidence, over the objections and exceptions of the defendants, a contract from Quint to the plaintiff of the mining claim in question, and a deed executed by Quint to the plaintiff in pursuance of such contract, which deed, however, was executed subsequent to the commencement of the action. The contract is as follows:

"This instrument, made and entered into by and between Frederick Quint, party of the first part, and the Chisna Mining and Improvement Company, a corporation, party of the second part, witnesseth as follows: Whereas, the said party of the first part, by a certain contract heretofore executed and delivered, has agreed to sell, assign, transfer and convey to G. C. Hazalet and A. J. Meals the placer mining claim hereinafter described, for value received, and for certain considerations expressed in said contract, which contract has been duly assigned to the said party of the second part, Chisna Mining and Improvement Company, now, therefore, in consideration of the said contract, and of a valuable consideration to me in hand paid by the said party of the second part, I, the said party of the first part, hereby sell to the said party of the second part, the placer mining claim hereinafter described, and I do hereby agree to execute a lawful deed or deeds conveying said property to the said party of the second part, and to place the said deed

in the hands of G. C. Hazalet to be held by him in escrow and to be by him delivered to the said party of the second part, Chisna Mining and Improvement Company at any time on or after the first day of May, 1900; provided on said first day of May, 1900, the said party of the second part has on his part performed the terms and conditions of the above mentioned contract and required therein to be performed by said·G. C. Hazalet and A. J. Meals, their heirs and assigns, in so far as said terms and conditions are subject to be performed prior to the said first day of May, 1900,"

—Describing the claim in ·question, which contract was signed by the party of the first part, and duly acknowledged by him, on the 8th day of January, 1900.

The points relied upon by the appellants are stated by them, in substance, as follows: That the court erred in admitting in evidence the contract and deed mentioned, in denying the defendants' motion for a nonsuit, and in entering the decree.

The contract was plainly admissible, for it was evidence of the right under which the plaintiff entered into and held possession of the mining claim in controversy. Conceding that the deed executed in pursuance of the contract was erroneously admitted, upon the ground that it was not executed until after the commencement of the action, the error, if any, was unimportant if the plaintiff's possession under the contract from the original locator of the claim conferred upon it such a title or interest therein as entitled it to maintain the action. Morton v. Folger, 15 Cal. 275, 283.

The exception of the defendants to the order overruling their motion for a nonsuit was followed by evidence on their part in defense of the action, which waived the exception, and precluded their assigning the ruling for error, even if the motion be regarded as appropriate to the nature of the action. Union Pacific Railroad Company v. Daniels, 152 U. S. 684, 687, 14 Sup. Ct. 756, 38 L. Ed. 597; ·Columbia & Puget Sound Railroad v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405; Union Pacific Railroad Company v. Callaghan, 161 U. S. 91, 95, 16 Sup. Ct. 493, 40 L. Ed. 628.

The remaining point presents the only real question in the case, which is whether the plaintiff showed sufficient title or interest in ˙the property in question to maintain the action. No one questions that in an ordinary suit in equity in a federal court, to quiet title, the complainant must show a legal as well as an equitable title, and such is the effect of many of the decisions cited by counsel. But the case.here is governed by different considerations; for, in the first place, the statute of Alaska (Act June 6, 1900, 31 Stat. 333, 334, c. 786) expressly provides that "the distinction between actions at law and·suits in equity and the forms of all such actions and suits are abolished, and there shall be but one form of action for the enforcement or protection of private rights and the redress or prevention of private wrongs, which is denominated a civil action." In the second place, it is expressly provided by section 910 of the Revised Statutes [U. S. Comp. St. 1901, p. 679] that "no possessory action between persons in any court of the United States for the recovery of any mining title or for damages to any such title, shall be affected by the fact that the paramount title to the land in which such mines lie is in the United States, but each case shall be adjudged by the law of possession."

And, in the third place, by section 475 of the Alaska Code it is declared that "any person in possession by himself or his tenant of real property, may maintain an action of an equitable nature against another who claims an estate or interest therein adverse to him, for the purpose of determining such claim, estate, or interest." Act June 6, 1900, 31 Stat. 410, c. 786.

Under such statutory provisions, it is clear that one who first makes a valid location of a mining claim and enters into its possession acquires a title thereto, not, it is true, the legal title, which remains in the United States until conveyed by it, but such a title as the laws of the United States recognize and will protect, as against an intruder such as the evidence embodied in the record shows the defendants in the present case to have been. And decisions to this effect are sufficiently numerous, we think, to put an end to the question. Thus, in the case of Parley's Park Silver Mining Company v. Kerr, 130 U. S. 256, 9 Sup. Ct. 511, 32 L. Ed. 906, which was an action brought in the District Court of the territory of Utah, founded upon a statute of the then territory of Utah substantially and almost exactly the same as section 475 of the Alaska Code, the Utah statute reading as follows: "An action may be brought by any person in possession by himself or his tenant of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate, or interest"—the court stated the pleadings of the parties as follows:

"The complaint sets forth the cause of action in the very terms of this section, alleging, in effect, that the plaintiff is owner, subject only to the paramount title of the United States, and in possession of the lands in question; that the defendant claims an adverse interest or estate therein; that the said claim is without legal and equitable foundation and void; and that it is a cloud on plaintiff's title, embarrasses him in the use and disposition of the property, and depreciates its value. Therefore he prays (1) that the defendant may be required to set forth the nature of his claim, and that all adverse claims of the defendant may be determined by a decree of the court; (2) that by said decree it be adjudged that the defendant has no interest or estate whatever in said land, and that the title of the plaintiff is valid and good; (3) that the defendant be enjoined against asserting any adverse title to said land or premises. The defendant in his answer denies the plaintiff's ownership and possession, and sets up a paramount title in himself based upon a patent to him from the United States embracing the land in question."

After so stating the issues the court said:

"The first issue to be determined is whether the complaint is sufficient to authorize the admission of evidence impeaching the validity of a patent or to sustain a judgment annulling it. This question was directly presented in the case of Ely v. New Mexico & Arizona Railroad Co. (recently decided by this court) 129 U. S. 291, 9 Sup. Ct. 293, 32 L. Ed. 688. That was an action commenced in a territorial court under the statutes of that territory, almost literally the same as the statutes of Utah under which this action arose, and the prayer for relief was precisely the same in both complaints. The court held in that case that the rule in force in the Circuit and District Courts of the United States, that a bill in equity to quiet title or remove clouds must show a legal and equitable title in the plaintiff, and set forth the facts and circumstances upon which he relies for relief, does not apply to an action in the territorial court founded upon territorial statutes which unite legal and equitable remedies in one form of action. The complaint in the present case, in compliance with the practice act of Utah territory, states in concise language the two ultimate facts upon which the claim for relief depends, that

the plaintiff is in possession of the property, and that the defendant claims an interest or estate therein adverse to him. These are sufficient to require the nature and character of the adverse claim on the part of the defendant to be set up, inquired into, and judicially determined, and the question of title finally settled."

The case of Pralus v. Pacific G. & S. M. Co., 35 Cal. 30, was an action to quiet title to a quartz mining claim upon the public lands, and the court there said:

"The plaintiffs, as appears by the complaint, claim only a possessory title in or upon the public lands of the United States, and the first question presented is whether such a claim or title is sufficient to authorize an action by the party in possession under the same to determine the adverse title or claim of a party out of possession. This has been frequently decided by this court in the affirmative, and we think correctly. Merced Mining Company v. Fremont, 7 Cal. 319, 68 Am. Dec. 262; Smith v. Brannan, 13 Cal. 107; Boggs v. Merced Mining Company, 14 Cal. 279; Curtis v. Sutter, 15 Cal. 259; Head v. Fordyce, 17 Cal. 149."

The case of the Niagara Consolidated Gold Mining Company v. The Bunker Hill Consolidated Gold Mining Company, 59 Cal. 612, was an action to quiet title to certain mining ground in which the plaintiff recovered judgment. The case was taken to the Supreme Court on three bills of exceptions, and in the course of its opinion the court said:

"The third bill of exceptions presents two or three points, the first of which relates to the admission in evidence of the deed under which plaintiff claimed to have derived its title. The deed did not describe the land in dispute, and was therefore inadmissible as a muniment of title. But the plaintiff's right to the property did not depend upon the deed, and was as good without it as with it. The title was purely a possessory one, and the plaintiff, having proven possession of the mining ground, made out all the title required by the law to entitle it to the relief demanded. The admission of the deed in evidence did not, therefore, injure the defendant in any possible manner."

In Benson Mining Co. v. Alta Mining Co., 145 U. S. 428, 430, 12 Sup. Ct. 877, 36 L. Ed. 762, the Supreme Court quotes with approval this language of the Secretary of the Interior:

"At the outset it is proper to remark that by the mining laws of the United States three distinct classes of titles are created, viz.: (1) Title in fee simple; (2) title by possession; (3) the complete equitable title. The first vests in the grantee of the government an indefeasible title, while the second vests a title in the nature of an easement only. The first, being an absolute grant by purchase and patent without condition, is not defeasible; while the second, being a mere right of possession and enjoyment of profits without purchase and upon condition, may be defeated at any time by the failure of the party in possession to comply with the condition, viz., to perform the labor or make the annual improvements required by the statute. The equitable title accrues immediately upon purchase, for the entry entitles the purchaser to a patent, and the right to a patent, once vested, is equivalent to a patent issued."

See, also, Crown Point Gold Mining Co. v. Crismon (Or.) 65 Pac. 87; Wilson v. Triumph Consolidated Mining Co. (Utah) 56 Pac. 300, 75 Am. St. Rep. 718; Aurora Hill Con. Min. Co. v. 85 Min. Co. (C. C.) 34 Fed. 515; Lindley on Mines, § 535.

The judgment is affirmed.