DELANEY'S ESTATE et al. v. KIERNAN.

(First Division. Juneau. December 14, 1906.)

No. 33K.

1. QUIETING TITLE (§ 13*)—EQUITY—JURISDICTION—POSSESSION OF DEFENDANT.

Where a bill in equity to quiet title alleges plaintiff's possession, and that fact is denied by the answer, and defendant therein alleges and the evidence shows that defendant was in actual

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

possession when the suit was begun, the suit should be dismissed for want of jurisdiction in equity.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 8; Dec. Dig. § 13.*]

Plaintiffs bring this suit to quiet title to two lode mining claims, to wit, the Copper King and the Poorman, situated on the north shore of Kasaan Bay, about one mile and a half from Kasaan Bay post office, on Prince of Wales Island. The testimony, except that of the plaintiff Gallagher, was taken before a referee. Gallagher's testimony was taken on written interrogatories.

The evidence discloses that on July 21, 1899, D. W. Gallagher and James Delaney discovered and located the two mining claims which are the subject of this suit. On July 31st of that year the location notice of the Poorman lode was recorded in the office of the commissioner for the Wrangell recording district, which at that time embraced Prince of Wales Island. It does not appear from the evidence that the Copper King notice was recorded. The annual assessment work upon the claim was performed by Gallagher and Delaney for the years 1900, 1901, and 1902. Early in 1902 the defendant and Delaney had a conversation about the claims, to the effect that Delaney and his partner had decided to sell them. Pursuant to and as a result of that negotiation, on July 11, 1902, Gallagher and Delaney executed and delivered to one John McDonald the following instrument:

"Option or Bond.

"This agreement, made this day and between James Delaney and Dan Gallagher, owners of the Poorman and Copper King mining claims, and wharf site located two and one-half miles S. W. from the town of Kasaan, on Prince of Wales Island, parties of the first part, and John McDonald, party of the second part: That for and in consideration of the sum of ten ($10,000) thousand dollars and 5,000 shares of stock, part cash and part mining stock, as follows:

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

"Consideration.

"One thousand dollars in ninety days from date, two thousand dollars in six months, seven thousand dollars in one year, the balance of the purchase price to be paid in (5,000) shares mining, milling, smelter stock at the par value when issued by the said John McDonald and associates.

"Do hereby agree to relinquish all our right and title in aforesaid property, and further agree that, should a question of title arise before the final payment be made, to defend the same.

|  |  |
|---|---|
| "Witnesses: | his<br>[Signed]  James  X  Delaney.<br>mark |
| "John Stedman. | D. Gallagher |
| "John Fitzwilliam. | John McDonald." |

Defendant asserts that this instrument was a deed. The witness Bent testified to conversations with both Delaney and Gallagher. Delaney told him at Ketchikan that he had sold his property and had received the first payment, and that Gallagher had gone to the old country. Gallagher and Bent met in the streets in Seattle. Gallagher said to the latter at that time that he had sold out and was going back to the old country. Gallagher in his testimony, taken under a commission about a month after the taking of the testimony in the main case, denied that he intended the option as a deed, but merely to give McDonald and his associates an opportunity to buy and that he never gave a deed. He also denies that he ever represented to Kiernan or any one else that he had ever parted with his interest or title to the two claims, or that he had ever transferred his right, title, or interest therein to McDonald or the Alaska King Mining & Smelting Company.

In November McDonald went upon the premises. Early in 1903 a gang of men under a man named Holland went onto the claims, representing McDonald and his associates, and commenced work there. In March, 1903, the defendant Kiernan entered into a contract with the Alaska King Mining &

3 A.R.—13

Smelting Company to°do assessment and development work upon the claims. Before taking the contract, Delaney told him that they had sold the claims to McDonald, and, after having entered into this contract, Delaney and Kiernan had another conversation, in which Delaney said that he was glad Kiernan had the contract, and that, were he not sick, he would go to work for Kiernan, and neither he nor Gallagher, or his agent, at that time or afterwards, made to Kiernan any claim to the properties. About April 1, 1903, Kiernan with several men went to the claims and proceeded to develop the claims as he had contracted to do. A little later Delaney told Martin Gallagher, the agent and attorney in fact for the plaintiff D. Gallagher, that Kiernan was working on the claims. As Gallagher expressed it, "He took a contract on the ground." At this time M. Gallagher knew of it himself.

James Delaney died on May 1, 1903, and J. W. Stedman and M. E. Martin were, on the 15th day of May, duly appointed the administrators of his estate. They immediately qualified and entered upon the discharge of their duties. Kiernan continued his work upon the claims. The payment due July 11, 1903, under the bond or option, was not made, and Martin Gallagher, acting under the power of attorney from his brother, who was then absent in Europe, wrote a letter to Kiernan, stating that the payment had not been made, and that he (Kiernan) had better close down the work. This letter was written about July 12, 1903, addressed to Kiernan at Kasaan Bay post office, stamped, and duly mailed. A day or two later Martin Gallagher went to the claims, saw Kiernan, and stated the same thing to him. After a stay of half an hour, he returned to Ketchikan. About July 25th M. Gallagher again went to the claims and found the work shut down.

When, in December, 1903, Kiernan had received no pay for the work done by him under the contract with the Alaska King Mining & Smelting Company, he filed a lien against

the property, and on December 5, 1903, began an action to foreclose his lien. Neither Gallagher nor the estate of Delaney, deceased, was made a party to the foreclosure; the Alaska King Mining & Smelting Company being the only defendant.

Personal service not being obtained, the court directed that the service be made by publication. On March 10, 1904, judgment was rendered in favor of Kiernan, and later, on June 6, 1904, the property was sold under an execution to Kiernan, who was the highest bidder. On that a marshal's certificate of sale was executed and delivered to Kiernan. The latter went at once to the property, and on June 10, 1904, made a discovery of mineral-bearing rock in place, staked the ground, and posted a notice of location, which he afterwards, on June 28, 1904, recorded at the Ketchikan recording office. This claim, which he named the Copper Cave, is admittedly within the boundaries of the Copper King claim. The sale was, on October 5, 1904, confirmed, and the marshal executed the deed therefor, pursuant to the order of the court.

On October 15, 1904, Martin Gallagher, in his capacity as attorney in fact and agent for the plaintiff Gallagher, and for Delaney's administrators, supplied himself with a stock of provisions and went to the claims. Here he found Kiernan occupying the cabin, and when he attempted to work he was first told by Kiernan that he had no right there, and that he (Kiernan) was there to see that he did no work. When Gallagher persisted, Kiernan drew a revolver and ordered him not to do any work, threatening to kill him should he fail to obey. A day or two later Gallagher again attempted to work, but Kiernan stood on the pick which he was using and pushed him away from the spot, again threatening him with personal violence if he persisted. Gallagher then left the properties and did not return. In a few days after this episode, about October 24, 1904, this suit was begun.

On January 1, 1905, Kiernan made a discovery, staked and posted a notice of location upon what he called the Mountain View lode mining claim, but which is conceded to be within the lines of the Poorman claim, as theretofore located by Gallagher and Delaney in 1899. At the time of the commencement of this suit, the defendant was occupying and had the actual, physical possession of the premises.

Shackleford & Lyons and Oscar Foote, for plaintiffs.

A. J. Hellenthal, for defendant.

GUNNISON, District Judge. For the purpose of the determination of this suit, it is necessary to first answer the question as to the possession. The evidence disclosing the fact that Kiernan was in the actual physical possession, let us examine into the contention of the defendant that the bill should be dismissed. The plaintiffs set up in their complaint that on the 21st day of July, 1899:

"D. W. Gallagher, this plaintiff, and James Delaney were the owners of, in the possession of, and entitled to the possession of the claims in controversy at all times from that date until the death of said Delaney, May 1, 1903; that plaintiff D. Gallagher and the estate of Delaney, deceased, are and have been the owners of both of said claims since the death of Delaney, and are now entitled to the possession thereof; and that defendant claims an adverse interest or estate in both claims."

But nowhere do plaintiffs allege possession at the time of the commencement of the suit.

After a general denial of the allegations of the complaint, defendant sets up two affirmative defenses, alleging himself to have been in the sole, lawful, and exclusive possession of the property, and prays:

"That the plaintiffs' bill of complaint be dismissed, and that plaintiffs take nothing by reason thereof, and, further, that this honorable court grant to defendant such further relief as, under the law and the evidence, he may prove himself entitled to"

—and for costs and disbursements. In their reply plaintiffs, among other things, deny:

"That the defendant is or ever has been in the lawful occupation or possession of the said mining claims or any part thereof."

They then set up an attempt by plaintiffs' agent to do the assessment work for 1904, and that the defendant, by threats and the display of a pistol, drove the agent from the claims, and that the agent did not return. In other words, the defendant, while, under the Alaska Code, unable to enter a plea in abatement, has by his answer made an issue of jurisdictional facts; that is, he has asserted his own actual, physical possession of the claims.

It has been held in the case of Love v. Morrill, 19 Or. 545, 550, 24 Pac. 916, that this is the proper manner of raising the question of jurisdiction. The court there said:

"The answer tendered an issue on the material allegations of the complaint which could only be determined from the evidence, and if it appears from the evidence that the real dispute between the parties is not cognizable by a court of equity, the complaint should be dismissed."

O'Hara v. Parker, 27 Or. 156, 39 Pac. 1004, arising in Oregon, was a suit to quiet title, in which the actual possession was in the defendant. The court there refused to dismiss the plaintiffs' bill, on the ground that the defendant had in no way pleaded to the jurisdiction of the court, but, on the contrary, had himself prayed for equitable relief; in other words, that he had waived the question to the jurisdiction. In another and later case from Oregon (Moore v. Shofner, 40 Or. 488, s. c. 67 Pac. 511) the defendant denied plaintiffs' allegation of possession, alleged possession in himself, and asserted that the court was without jurisdiction. He was held not to have waived the question of jurisdiction, and that the effect was that the trial was as to the jurisdiction of the court.

It will be seen, therefore, that the jurisdiction of the court in a suit to quiet title turns primarily upon the question of possession. Section 475 of the Alaska Code of Civil Procedure declares that:

"Any person in possession, by himself or his tenant, of real property, may maintain an action of an equitable nature against another who claims an estate or interest therein adverse to him, for the purpose of determining such claim, estate or interest."

Is the possession, there referred to, to be actual or constructive? Plaintiffs contend that, under this language, constructive possession is sufficient, and rely upon the case of Fulkerson v. Chisna Mining & Improvement Co., 122 Fed. 782, 58 C. C. A. 582. We do not think that the case cited sustains the contention. The question there was not as to what constituted possession, but what was the character of the title requisite to support a suit to quiet title. It was there held that:

"It is clear that one who first makes a valid location of a mining claim and enters into the possession acquires a title thereto, not, it is true, the legal title, which remains in the United States until conveyed by it, but such a title as the laws of the United States recognize, and will protect as against an intruder, such as the evidence embodied in the record shows the defendants in the present case to have been."

The plaintiffs there were in possession of the property, or the greater part of it. They held the actual pedis possessio, not a constructive possession. In that respect it differs from the case at bar, where the plaintiffs do not allege possession in themselves. On the other hand, the defendant pleads the possession, and the plea is sustained by the evidence.

The rule of the law, that before a person may commence a suit to quiet title he must not only have a title in himself, but that he must also be in the actual, physical possession of the property, is so firmly established that a discussion of the multitude of cases on the subject seems unnecessary. A few

of them are here cited: Badger G. M. & M. Co. v. Stockton G. & C. M. Co. (C. C.) 139 Fed. 838; O'Hara v. Parker, 27 Or. 156, 39 Pac. 1004; Stark v. Starr, 6 Wall. 419, 18 L. Ed. 925; California Oil Co. v. Miller (C. C.) 96 Fed. 19; Frost v. Spitley, 121 U. S. 556, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Coolidge & McClaine v. Forward & Heneky, 11 Or. 120, 2 Pac. 293; Silver v. Lee, 38 Or. 508, 63 Pac. 882; Elbing et al. v. Hastings et al., 3 Alaska, 125.

Not only is this rule sustained by the decisions, but in the opinion of the court no other conclusion can be reached from a perusal of the Alaska Code. Section 475, quoted above, provides that "any person in possession" may maintain an action of an equitable nature against the adverse claimant. And Congress, careful to protect the interests of the public, provides a method by which one deprived of the actual possession and enjoyment of property in which he has a legal estate may recover the same. Section 301 of the Alaska Code of Civil Procedure, under the title "Actions to Recover Possession of Real Property," is as follows:

"Any person who has a legal estate in real property, and a present right to the possession thereof, may recover such possession with damages for withholding the same, by an action. Such action shall be commenced against the person in the actual possession of the property at the time, or if the property be not in the actual possession of any one, then against the person acting as the owner thereof."

Having found that, as a matter of fact, the actual possession of the property in controversy was, at the time of the commencement of this suit, in the defendant, and that, as a matter of law, a suit to quiet title may not be maintained where the plaintiff is out of possession, it is, we think, clear that the bill should be dismissed, and defendant should be paid his costs. This being decisive of the cause, a consideration of the other questions is unnecessary.

Let a decree enter.