Argued May 6, affirmed May 25, 1915.

## RICHEN v. DAVIS.

(148 Pac. 1130.)

**Mines and Minerals—Public Mineral Lands—Quieting Title—Evidence—Assessment Work.**

1. In an action to quiet title to a placer mining claim, evidence *held* to show that the work of clearing brush and trees therefrom, done by plaintiffs the year prior to defendant's relocation, was for the purpose of enabling the claim to be worked by dredging, and was therefore assessment work, which prevented a forfeiture of the claim.

**Mines and Minerals—Public Mineral Lands—Quieting Title—Burden of Proof—Forfeiture.**

2. In a suit to quiet title to a placer mining claim against a junior locator, the burden is on the junior locator to show failure by the senior locator to do the annual work required by Revised Statutes of the United States, Section 2324 (Comp. Stats. 1913, § 4620).

Mines and Minerals—Public Mineral Lands—Forfeiture—Resumption of Work.

3. Where the senior locators of a placer mining claim had resumed work thereon prior to the relocation of the claim, the land was not subject to relocation.

Mines and Minerals—Public Mineral Lands—Forfeiture—Degree of Proof.

4. To establish forfeiture of a mining claim, it must be shown by clear and convincing proof that the former locator has failed to perform the work or make the improvements required, since forfeitures are not favored.

Mines and Minerals—Public Mineral Lands—Forfeiture—Resumption of Work—Intervening Claim.

5. Where the senior locator of a placer mining claim had failed to do the required assessment work, a relocation by another, who also failed to do the work for a succeeding year, does not terminate the right of the senior locator to resume work thereon, so as to authorize a third person to relocate the claim after the senior locator had done the assessment work for a succeeding year, since it is only against intervening rights that a resumption of work on a mining claim does not resuscitate the possessory rights of the claimant.

[As to abandonment or forfeiture of mining claims, see note in 87 Am. St. Rep. 403.]

Mines and Minerals—Public Mineral Lands—Assessment Work—Character of Work.

6. The fact that the claimant of a placer claim fenced it and pastured a cow thereon and cut firewood therefrom, while such work cannot be counted as part of assessment work, does not defeat the possessory rights of the claimant, where sufficient mining work was done thereon.

From Baker: GUSTAV ANDERSON, Judge.

In Banc.    Statement by MR. JUSTICE BEAN.

This is a suit by D. E. Richen and Curtis Haley against Titus E. Davis, to quiet title to an unpatented mining claim covering the southeast ¼ of the southeast ¼ of the southwest ¼ of section 29, township 9 south, range 37 east, Willamette Meridian, containing approximately 10 acres of placer ground near Sumpter, Oregon. The Circuit Court rendered a decree in favor of the plaintiffs, and the defendant appeals.            AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John L. Rand.*

For respondents there was a brief over the names of *Mr. William Smith, Mr. Morton D. Clifford* and *Mr. George E. Allen,* with oral arguments by *Mr. Smith* and *Mr. Clifford.*

MR. JUSTICE BEAN delivered the opinion of the court.

The plaintiffs base their claim to the mining ground upon a location made April 27, 1905, by plaintiff D. E. Richen and one Wm. H. Kitchen, under the name of the Kentucky Placer Mining Claim; a proper record having been made afterward. The rights of Kitchen under the location have since been acquired and are now held by plaintiff Haley. The defendant claims the ground under a location as a placer claim made by him June 26, 1914, notice of which was duly recorded. The answer admits the location made in 1905, under which the plaintiffs claim. It is the contention of defendant Davis that no work in assistance of extracting the mineral from the ground was done upon the property by Richen and Kitchen between 1905 and 1914, when it was located by him. He states that no work was done "to my satisfaction." In his behalf it is asserted that the clearing of brush and timber on the premises during 1913 was for the purpose of obtaining firewood, and that the only use made of the land was residing upon it and using it for pasture. All parties admit it to be placer ground and valuable for mining purposes. The main question for determination is: Was the land unappropriated or open to relocation when Davis attempted to relocate it June 26, 1914, or had the claim of plaintiffs been kept alive by the proper amount of assessment work being done

during the year 1913 or before defendant posted and recorded his notice?

Placer mining claims are subject to entry and patent under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims; but, where the lands have been previously surveyed by the United States, the entry in its exterior limits shall conform to the legal subdivisions of the public lands: Section 2329, U. S. Rev. Stats. (Comp. Stats. 1913, § 4628; 3 Fed. Stats. Ann. 604). Local rules and regulations of miners and state statutes are recognized as controlling when not in conflict with laws of the United States, subject to certain requirements, among which are the following: The location must be distinctly marked on the ground so that its boundaries can be readily traced. On each claim, until a patent has been issued therefor, not less than $100 worth of labor shall be performed, or improvements made during each year. Upon failure to comply with the conditions required—

"the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns or legal representatives, have not resumed work upon the claim after failure and before such location": Section 2324, U. S. Rev. Stats. (Comp. Stats. 1913, § 4620; 3 Fed. Stats. Ann. 600).

It is claimed that, in fulfillment of the requirements of the last-named section, the plaintiffs performed the requisite amount of labor during the year 1913, and were at work upon the claim at the time Davis attempted to make his entry. The proof submitted fairly substantiates this claim of plaintiffs. It seems that, for several years after the location in 1905, interest in mining was at a low ebb, and but little work

was done on the claim. In recent years the Powder
River Dredge Company has been operating a dredge
in the immediate vicinity of the premises in contro-
versy. The officers of the company drilled seven holes
to bedrock near the line of this ground in order to
prospect the same, and imparted to Mrs. Richen, who
appears to be the moving spirit on the plaintiff's side,
the information that, to dredge the claim and obtain
the gold, it would be necessary, first, to clear away
the timber, brush and coarse débris thereon. The
land is comparatively level, having a fall of only 1
per cent; too flat for successful hydraulic mining. The
evidence shows that plaintiffs had peaceable posses-
sion, and that the following work was done in good
faith by them during the year 1913:

| | | |
|---|---:|---:|
| William Baker worked 14 days, for which he received | $ 42 | 00 |
| Fitchner worked in April and May | 20 | 00 |
| Fitchner worked 16 days in the fall | 40 | 00 |
| Mose Smith, December 31st | 3 | 00 |
| Mrs. Richen, 24½ days and some nights at $1.25 | 30 | 70 |
| Making a total shown by the evidence | $135 | 70 |

1. The above was for the purpose of preparing the
ground for dredging and extracting the mineral. Con-
siderable labor was also performed by them during
the early part of 1914, before defendant initiated his
claim. It is shown that the work performed in 1913
was worth more than the estimated cost; that about
1½ acres of the land was cleared; and that the same
was worth from $125 to $175 per acre. Some land
in that district, somewhat similar, has been cleared at
an expense of $200 per acre. Defendant does not
deny that work was done on the claim during the time
mentioned, but asserts that it was not mining work.

This allegation he has failed to establish. On the other hand, the evidence preponderates in favor of the fact that the more profitable and practical way of extracting the mineral is by means of a dredge, and that, in order to do so, it is absolutely necessary to clear off the brush and timber. It appears that a portion of the land was covered with a thick growth of brush, some larger timber, and considerable débris which had been deposited by the river during high water. In his evidence defendant pictures the open land, and minimizes the brush, timber and débris formerly on the claim. He asserts that the brush was only cut away to make room for the ax in cutting the timber for firewood, but the evidence shows otherwise. What we deem a fair statement comes from one of the defendant's witnesses, Mr. S. S. Terrill, to the effect that 4½ or 5 acres, about half of the tract, were originally in brush, and now only 1 or 1½ acres; that they cut the brush "tolerable clean" during the last few years. It is evident that more than $100 worth of labor has been bestowed in reducing the acreage of brush and timber.

2. Davis undertook to make a relocation of the claim, and it devolves upon him to show that the rights of the prior locators, Mrs. Richen and the assignee of Kitchen, have expired by abandonment, forfeiture, or for other causes: 27 Cyc. 601. This burden he assumed in this case, but failed to support his claim by proof.

3. It is shown on the part of plaintiffs that the ground was appropriated on June 26, 1914. Mrs. Richen and Haley being at work on the claim at that time, the land was not then subject to relocation: *Bishop* v. *Baisley,* 28 Or. 119 (41 Pac. 936), and cases there cited.

4. In order to establish forfeiture of a mining claim, it must be shown, by clear and convincing proof, that the former locator and owner has failed to have the work performed or the improvements made as required by the statute. Forfeitures are not favored in such cases. Abandonment is a question of intent: *Hammer* v. *Garfield Min. Co.,* 130 U. S. 291 (32 L. Ed. 964, 9 Sup. Ct. Rep. 548); *Von Schmidt* v. *Huntington,* 1 Cal. 55, 6 Morr. Min. Rep. 284; 27 Cyc. 600; *Thomson* v. *Allen,* 1 Alaska, 636; *Loeser* v. *Gardiner,* 1 Alaska, 641; *Colman* v. *Clements,* 23 Cal. 245; *Crown Point Min. Co.* v. *Crismon,* 39 Or. 364 (65 Pac. 87). Section 544 of 1 Snyder on Mines says:

"Since it is axiomatic that forfeitures are odious to the law, and for that reason are not countenanced or favored by the courts, all doubtful cases will be construed against the forfeiture. But, while this is true, the law exacts a faithful compliance with the conditions required. Yet the burden of proving a forfeiture falls upon the person alleging it, and it is always a question of fact for the jury whether a mining claim had been abandoned or forfeited prior to relocation."

Thus far we have considered the rights of the plaintiffs and the defendant to the possession of the claim in question, which, in our opinion, are the only questions necessary for discussion. It is earnestly urged by the learned counsel for defendant that other matters have a bearing upon the case, to which we will briefly refer.

5. Prior to the plaintiffs' location in 1905, the premises were located and claimed as placer ground, and an application for a patent was made by one W. A. Ellis for a tract of land, including the premises in controversy, as a placer claim. While the application was pending, Ellis conveyed the tract to V. R. Meade.

Patent was refused because of the protest filed by Mrs. Richen. Mrs. Richen had resided in a tent upon the land and in a building constructed thereon by a local militia company, prior to the plaintiffs' location, for about 14 years. In 1902 defendant constructed a house upon the premises and has resided thereon a portion of the time since. At one time about ten dwelling-houses were situate on the land. On January 1, 1910, V. R. Meade located the ground and recorded his notice of location, a copy of which is found in the record. He failed to perform the assessment work during the year 1911, and relocated the claim on January 1, 1912. He states, however, that he did not stake the claim nor mark the boundaries thereof, and he appears to have done nothing to develop the same. He asserts no right to the land, and, so far as the title of plaintiffs or defendant to the property is concerned, his attempted location amounts to nothing. If this were subtracted from plaintiffs' right, it would not change the same. If added to defendant's claim, it would have no effect thereon. We consider, therefore, that the attempted location of Meade does not affect the case. There has been controversy before the Department of the Interior of the United States and litigation in the state courts growing out of the Ellis location, and considerable animosity has been engendered between some of the parties, echo of which is distinctly heard in these proceedings. A short time before the present suit, defendant Davis was notified to quit the premises. He states in regard to the matter that "if they had let me alone I would never have disturbed them," and testifies in substance that if they had properly requested him to abandon the land he would have moved his house away. It is argued on the part of defendant that the notice filed and re-

corded by Meade in 1910 cut off and terminated any rights of the plaintiffs. This, at the most, would not be a sufficient cause for the forfeiture of the claim of plaintiffs, which, as we have above indicated, is not favored by the courts. It may be true that there was a lack of the required amount of assessment work performed by the plaintiffs on the claim prior to 1913, and on account thereof a default. However, the required annual work for that year was done by the plaintiffs, and their right to the claim was thereby revived, notwithstanding the previous default, which was thereby cured: *Crown Point Min. Co.* v. *Crismon,* 39 Or. 364 (65 Pac. 87), citing *Justice Min. Co.* v. *Barclay* (C. C.), 82 Fed. 554. The filing and recording of the notice by Meade would not change the default nor prevent the right of plaintiffs from being resuscitated. Mrs. Richen relocated January 1, 1912, but makes no claim on account thereof. The possession of the land is the only thing involved, and it is as against intervening rights that a locator cannot resume work and resuscitate his possessory rights: 1 Lindley on Mines (2 ed.), § 330. The right of defendant Davis did not intervene between plaintiffs' location and the time of the performance of the required amount of labor by them. The object of posting and recording mining notices is to protect the locator and give him an opportunity to develop the property and obtain the ore and eventually get title to the land, if he continues the improvement to a sufficient extent. Defendant must rely upon his own right or title and cannot strengthen the same by tacking on a stale claim of some other person. As between plaintiffs and defendant, the former claim of Meade counts for naught. This we understand to be in harmony with the rulings of the Department of the Interior of the United States,

which have long been in vogue, relating to public lands. Whether the entry by Meade was made in good faith, or what his intentions were, or whether the same was valid, cannot be shown by Davis in order to affect his claim. Such entry did not inure to the benefit of Davis any more than to plaintiffs.

6. Much reliance is placed upon the fact that Mrs. Richen fenced the land and pastured her cow thereon. This would neither enrich nor diminish the value of the mineral in the ground. She obtained some four or five cords of wood from the land which did no harm. She swears, and it is not successfully refuted, that she takes no account of the cordwood in her calculations of the value of the representation labor. Her personal toil upon the ground in clearing and burning the brush and debris is a fair indication of her good faith in maintaining her claim. That, with the money expended in the same direction by Haley, negatives any intent to abandon the mine, and shows a resumption of the required labor prior to the attempted relocation of Davis.

The trial judge heard the evidence, personally examined the premises in controversy, and found the facts substantially as above indicated. We think his conclusions were correct. There is some conflict in the evidence, but principally as to deductions and conclusions.

It follows that the decree of the court should be affirmed, and it is so ordered.          AFFIRMED.