RIPINSKY v. HINCHMAN et al.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1910.)

No. 1,782.

1. MUNICIPAL CORPORATIONS (§ 999*)—CLOUD ON TITLE—SUIT FOR BENEFIT OF TOWN.

A suit cannot be maintained by citizens of an unincorporated town to relieve it of an alleged cloud cast on the title to lots and blocks by a conflicting homestead claim and surveys, since the town could make no claim of title to any of the lots and blocks, but the case would necessarily rest on the claim and title of the individuals, and not of the town.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2149; Dec. Dig. § 999.*]

2. QUIETING TITLE (§ 30*)—JOINDER OF PARTIES.

Where separate claimants of lots and blocks under an alleged unincorporated town site held under various claims of title, possession, etc., some of them claiming under the town site, others disregarding the town site, and some having only the mere shade of possessory right, they could not join in a single suit to remove an alleged cloud on the title to the land within the town site, consisting of a conflicting homestead entry survey, on the theory that such joinder would prevent a multiplicity of suits.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 64; Dec Dig. § 30.*]

3. QUIETING TITLE (§ 10*)—REMOVAL OF CLOUD—RIGHT OF PLAINTIFF.

In a suit to quiet title or to remove a cloud, plaintiff must succeed on the strength of his own title, and not on the weakness of that of his adversary.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 36-42; Dec. Dig. § 10.*]

4. QUIETING TITLE (§ 10*)—REMOVAL OF CLOUD—RIGHT OF PLAINTIFF.

One in possession of land merely, without legal or equitable title, cannot maintain a suit to quiet title or to remove a cloud therefrom.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 38; Dec. Dig. § 10.*]

5. PUBLIC LANDS (§ 39*)—TOWN SITES—POSSESSION.

The right of locators within an alleged town site, not shown to have been entered for that purpose, is at most a mere possessory right, with

the privilege of regularly entering the town site in the future, if the citizens so desire, and is insufficient on which to base a suit to remove a cloud on title.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 99; Dec. Dig. § 39.*]

6. PUBLIC LANDS (§ 103*)—CLAIMS—LAND DEPARTMENT PROCEEDINGS.

Where defendant's claim of homestead within the boundaries of an alleged town site was pending before the federal land department, a federal court would not, in general, determine the validity of such claim in advance of the land department's decision.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 307; Dec. Dig. § 103.*]

Appeal from the District Court of the United States for Division No. 1 of the District of Alaska.

Suit by G. W. Hinchman and others against Solomon Ripinsky. Decree for complainants, and defendant appeals. Reversed and remanded, with directions.

This is a suit to remove cloud from title. The bill of complaint sets forth, in effect, that plaintiffs are residents and occupants of property in the town of Haines, in the district of Alaska, being lands embraced in United States survey No. 573; that all of said lands embraced in said survey No. 573, ever since December, 1897, have been, and now are, in the actual possession and occupation in good faith, of the plaintiffs, and constitute the principal business section of the town of Haines; that plaintiffs are now occupying in good faith, and have so occupied since the said month of December, 1897, for business and residential purposes. Annexed to the complaint and made a part thereof is a plat of what purports to be the portion of the town site of Haines included within the exterior boundaries of survey No. 573, and in connection therewith it is alleged that certain streets and avenues shown on the map are public highways and thoroughfares, and are used in common by all the residents of the town, and that the remainder of the ground so set forth on the map, and by metes and bounds, and by the numbered parcels, is claimed and occupied in severalty by the various plaintiffs, respectively, setting out each particular parcel which each plaintiff claims to possess and occupy. In this connection it should be noted that some of the parcels shown on the plat, which appears to be in conflict with survey No. 573, do not seem to be claimed by any of the plaintiffs, or by any other persons. It is further alleged that the defendant, Solomon Ripinsky, claims an interest or estate, adverse to these plaintiffs, in and to said lands embraced in survey No. 573, but that defendant has never occupied any of said lands within the survey, except two small parcels, one, 25x50 feet, which he acquired by purchase from one H. Fay, and another, 100x150 feet, which he occupies as a residence, and that he has no right, title, or interest in or to any of the remaining portion of said tract. A decree is sought: First, that plaintiffs are the owners and in possession of, and entitled to the possession of, all the lands described in the complaint except the two parcels conceded to the defendant; second, that defendant has no right, title, or interest in or to any of the premises described in the complaint, except the two parcels alluded to; and, third, that plaintiffs have and recover of and from defendant their costs and disbursements, and for such other and further relief as may seem meet in equity.

The defendant answers by a general denial, and sets up affirmatively that for a long time prior to August 1, 1897, his grantors were the owners and in possession of all the land embraced by survey No. 573, and entitled to possession by virtue of prior claim, occupancy, and improvement thereof; that prior to said date defendant's grantors conveyed to him all their right, title, and interest in and to said premises, and defendant entered into possession and occupancy; that thereafter defendant remained in actual, open, notorious, and exclusive possession and occupancy thereof as a home, until

ousted by plaintiffs, by reason whereof defendant was the owner against all persons except the United States, and became and was entitled to the same as a homestead, and to enter the same under the acts of Congress extending the homestead laws to Alaska; that on or about August 1, 1897, the plaintiffs unlawfully, and without right, entered upon the lands described in the complaint, and ousted this defendant therefrom; and prays that the complaint of plaintiffs be dismissed.

A demurrer was interposed to the complaint, on the ground that several causes of action were improperly united. This was overruled, and after replication the cause went to trial upon the merits, resulting favorably to plaintiffs. It was decreed that plaintiffs were the owners of, and entitled to the possession of, all the lands embraced in survey No. 573, situated in Haines, Alaska, except two small tracts, one, 25x50 feet, known and described as lot 5, block 1, in said town of Haines, and another, 100x150 feet, in the extreme easterly end of said tract of land embraced in survey No. 573; and it was further decreed that defendant has no right, title, interest, or possession in or to any of the remainder of the land embraced in said survey No. 573. The defendant appeals.

Maloney & Cobb and R. W. Jennings, for appellant.

Shackleford & Lyons, Alfred Sutro, and H. D. Pillsbury, for appellees.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). The testimony is voluminous, and, while it has received our careful attention, only meager reference need be made to it, in the view we take of the controversy. There was introduced in evidence by the plaintiffs a plat of the town of Haines, which purports to have been compiled from the original town plat and actual surveys. The original survey of the town was made by one Walter Fogelstrom, and filed for record January 29, 1898. Fogelstrom acted in behalf and at the request of citizens of the place at the time. This town plat covers by its blocks 1, 2, 3, 4, 5, and 6, and streets and alleys, the larger part of the area of survey No. 573, which marks the boundaries of a homestead claimed by the defendant, Solomon Ripinsky; but there is a parcel of 270 to 280 feet in length and about 150 feet in width at the extreme east end, and another of about 150 feet in length at the west end, of the survey, that it does not include. The parcel at the east end not so covered by the town-site survey is designated on a plat, designed to show the conflict in survey between the town plat and survey No. 573, which was introduced in evidence by the plaintiffs, and marked "Plaintiffs' Exhibit No. 1," as "Ripinsky Homestead." It will be convenient hereafter to refer to this plat as "Plaintiffs' Exhibit No. 1."

The evidence of plaintiffs tends to show, so far as it is necessary to allude to it, that Harry Fay and five or six others went to Haines some time in December, 1897, and that they located upon certain lots or parcels of land within the limits of the town site of Haines as subsequently surveyed; that still others made like locations later, extending down to the time of the institution of this suit, and even thereafter; that some of these locators went into possession and made improvements, and in a few instances they have continued to live upon

such premises to the present time, utilizing the same for business or dwelling purposes. In many cases the possession has passed to others, either through mere delivery, or by bill of sale or deed, and the successors, either immediate or remote, now occupy the premises. In other cases, parties are in occupancy where no previous location has been made, perhaps claiming by right of mere possession, or under some bill of sale or deed from some alleged prior occupant. In still others, locations have been made for the purposes of trade and manufacture, the location notices asserting that the land specified "contains neither coal nor the precious metals, nor any town site, nor any land to which the natives of Alaska have prior rights."

There are 34 parties plaintiff to the suit, and to illustrate the style of holdings relied upon as a basis for the cause of suit it will be instructive to trace the titles of some of the plaintiffs, which are exhibited by the proofs and the record. In order to prevent confusion, the lots as numbered on the Fogelstrom plat begin on the east side and run west, for the south tier of each block from 1 to 6, and for the north tier from 7 to 12. The map to which reference is had here is one compiled by Elias Ruud. It is offered in evidence as "Plaintiffs' Exhibit No. 2," and may be termed the "Fogelstrom Map." The lots as shown on Plaintiffs' Exhibit No. 1, for the south tier in general are numbered from east to west, running from 1 to 6, and for the north tier from west to east, running from 7 to 12. The exceptions to this numbering are blocks 1 and 2. As to block 1, the south tier is numbered irregularly, beginning at the east and running from 1 to 11, and the north tier regularly, beginning at the west and running from 12 to 17. As to block 2, the south tier again is numbered irregularly from east to west, the numbers running from 1 to 8, and the north tier regularly from west to east, running from 9 to 14. The locations and transfers presumably are according to the Fogelstrom or Ruud map or plat, Plaintiffs' Exhibit No. 2.

H. Fay is a party plaintiff. He claims parcel 4, block 1, of the town of Haines. This includes portions of lots 3 and 4 as designated on the Fogelstrom map. A location notice is offered, Harry Fay as locator, whereby he located and claimed for residence and business purposes lots 3 and 4, situated in the town of Haines, as shown on the survey and plat of said town, made by Walter Fogelstrom, civil engineer. This notice bears date December 14, 1897. There is manifestly some mistake as to the date, for the Fogelstrom plat was concededly not made until a later date, and a location could not then have been made as shown on the survey and plat, because it was not then in existence. But, be that as it may, Fay testifies that he has been the owner and in possession of lot 4, block 1, ever since, occupying for business and dwelling purposes. This alludes to lot 4, Exhibit 1. In derogation of his title, however, a deed is in evidence showing that Fay and wife conveyed the east half of lot 4, Fogelstrom map, to James Fay, October 2, 1903. Thus stands Harry Fay's title and right to possession.

G. W. Hinchman, also a party plaintiff, claims to be the owner and in possession of lots 7 and 8, block 3, Exhibit 1, which correspond with lots 11 and 12, Fogelstrom plat. Hinchman testifies that lots 7 and 8

are his lots; that he has occupied them since the fall of 1903; that he bought lot 8 from M. W. Lane, and the other from Bjornstad; and then describes the improvements. The record shows deed from M. W. Lane to George W. Hinchman to lot 11, Fogelstrom map, of date October 8, 1903, and deed from M. W. Lane to Carl Bjornstad to lot 12, of date July 5, 1907. It does not appear that any location was ever made of these lots by any one.

Thomas Vogel claims lot 1, block 2, Exhibit 1, which corresponds in a measure with lots 1 and 2, Fogelstrom map. He testifies, under the name of Tim Vogel, that he is the owner of part of lot 1 and 45 feet of lot 2. He says he did not locate, but bought from E. L. Wilson. The record shows that location was made of lot 1 by Daniel Morris, January 26, 1898, and of lot 2 by A. Blonde, February 12, 1898. There are no conveyances from either Morris or Blonde. Vogel conveyed to W. H. Spencer, March 13, 1903, a parcel lying in the northeast corner of lot 1, being 50 feet east and west by 20 feet north and south. Spencer and wife conveyed to Tom Valeur, of date July 19, 1904, a parcel 40 feet in width off the north end of lots 1 and 2. There are no conveyances other than these.

S. J. Weitzman claims lot 3, block 1, and R. L. Weitzman, his wife, lots 12 and 13 of the same block, according to Exhibit 1. These lots cover parts of 3 and 4 and 11 and 12, Fogelstrom map. Weitzman testifies that he located lot 3, and that his wife bought 12 and 13 from Cronen, the original locator. The record shows Harry Fay located lots 3 and 4, Fogelstrom map, December 14, 1897, and that Harry Fay and wife deeded to James Fay lot 3 and the east half of lot 4 October 2, 1903. As to lots 12 and 13, or 11 and 12 Fogelstrom map, the record shows no location whatever. E. B. Cronen conveyed these lots, July 6, 1901, to R. L. Weitzman, and on October 30, 1902, R. L. Weitzman and husband conveyed 25 feet off the south end to D. Butterick.

W. W. Warne sues for lots 7, 8, 9, 10, and 11, of block 2, Plaintiffs' Exhibit 1. These correspond with 5, 6, 10, 11, and 12, Fogelstrom map. As to these lots W. B. Stout testifies that he thinks Rev. Mr. Warne claims them, that Warne is now in North Dakota somewhere, and that he placed some foundations for buildings on the lots and built a good fence around them several years ago. The record shows that lots 10, 11, and 12 were located by Adele Bigford December 14, 1898, and that lot 10 was again located September 6, 1906, by Cortes Ford, lot 11 on the same date by Frank Bruskers, and lot 12 by T. Wilder Ford. As it pertains to lots 5 and 6, Fogelstrom plat, there has been neither location nor deed of any sort.

Kate Kabler claims to be the owner of lot 1, block 4. As to this parcel the two maps correspond. It is shown that Mrs. Kabler is not in Haines, and that the lot is unoccupied; that it has a house upon it, but no other improvements. The record shows that W. W. Warne located it December 15, 1897, for trade and manufacturing purposes, and that E. Sanderson again located the same lot, under the alleged townsite, January 31, 1898.

These instances well illustrate the record testimony respecting the title to the property concerned. In other cases, the alleged owners do

not appear to testify to their claims and ownership; but witnesses were called and asked, in a general way, who were the owners of such and such lots, with the answers that the several claimants were such owners. Beyond this, Plaintiffs' Exhibit 1 further shows that a number of the lots of the town of Haines, lying in conflict with survey No. 573, are wholly vacant and unoccupied, and in actual fact no one is in possession or claiming any interest therein. So it thus appears that there are all shades of claim of title and possession, as it respects the lots of the town lying in conflict with survey No. 573, from that of the claimant who located his lot and has continued in unbroken possession to the present time to that of him who has the merest shadow of possession, as well as vacant lots without a pretense of claim of title, occupation, or possession.

On the other hand, Ripinsky claims to have obtained possession and title to his claim from one Sarah Dickinson and Billy Dickinson, her son, who were the wife and son of George Dickinson, under deeds dated December 2 and December 21, 1897, respectively, which were intended to convey 16 acres of land adjoining the Presbyterian Mission on the north, less 1 acre that had been sold to Dalton; the description being very indefinite. However, Ripinsky further claims that, immediately after the receipt of such deeds, he went into possession of the whole of such tract of 16 acres, less 1, and fenced the same by means of posts and wires, and was in the sole possession thereof, claiming the whole, before any person located thereon, either as a town-site locator or for trade and manufacturing purposes. Ripinsky further asserts that he continued in such exclusive possession, save that a number of persons unlawfully invaded his holding, until June 23, 1903, when he filed a notice of location of homestead, claiming the land as a homestead. More than two years later, namely, on or about December 18, 1905, he filed an amended notice, by which he claimed actual personal and continuous occupation of the land described, and settlement thereon, since December, 1897, and the exclusive legal right to and ownership of the tract through mesne conveyances and transfers thereof from the original claimants, who settled upon and exclusively occupied the same according to law from the year 1878 to date of transfer to claimant. The survey denominated "Survey No. 573" was made March 23, 1905, being previous to the filing of this amended notice. It seems that Ripinsky has applied to the land department for a patent according to the survey, and the matter is still pending in that department.

This statement sufficiently shows the relative claims of the disputants, so that the legal questions involved may be intelligently resolved and determined. Counsel for Ripinsky insist upon two propositions, which it is claimed are fatal to the maintenance of plaintiffs' suit: First, that there is a misjoinder of causes of suit; and, second, that plaintiffs are without sufficient title upon which to base a suit for removal of cloud.

The first question was raised by demurrer, and is now here insisted upon. As to this the plaintiffs contend that the present "is not a suit to establish the title of the appellees as against all the world; it is an action brought by them as owners of property in the town of Haines,

an unincorporated town (but surveyed and a plat thereof recorded in January, 1898), to remove from all of the property embraced within the limits of the town, as platted, the cloud cast upon its title by appellant's homestead claim (survey No. 573)." And thus it is argued that this is in reality a suit on the part of the citizens of the town to relieve the town of the alleged cloud cast upon the title to the lots and blocks with which survey No. 573 is in conflict; that, while it was not brought in behalf of the plaintiffs and all other persons similarly situated, it should have been so instituted, and ought now to be so treated; and that the appropriate relief is a decree removing the cloud in toto as it affects the town in any of its scope.

The answer to this contention is that the suit was not so instituted. But, if it had been, the case would be no different, as the basis thereof must needs be the claim and title of the individuals, not of the town. Indeed, the town can make no claim of title to any of the lots and blocks within its borders, especially an unincorporated town, which practically has no borders. The rule that a court of equity will interpose its jurisdiction to avoid a multiplicity of suits, "where a number of persons have separate and individual claims and rights of action against the same party, A., but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as coplaintiffs, or one of the persons suing on behalf of the others, or even by one person suing for himself alone" (1 Pom. Eq. Jur. § 245), is sought to be invoked; but we do not deem it applicable, for the reason that the plaintiffs' claims do not all arise from the same common cause, neither are they governed by the same legal rule, nor do they involve similar facts. One of the plaintiffs, possibly two or three, is claiming as an original locator within the alleged town site, having continued in unbroken possession to the present time, and being now in possession. Others show title simply by exhibiting a deed or deeds from some one else, without even depending upon any location under the townsite, or tracing their holdings or possession thereto. Others show mere possession, without else, and yet others show location for trade and manufacturing purposes, discarding the townsite, with an attempt to trace title and possession to such location. It is thus very apparent that the titles of the several plaintiffs, being held in severalty, are not of the same or similar kind or description, and the rule specified does not meet the case.

In the case of Osborne et al. v. Wisconsin Cent. R. Co. (C. C.) 43 Fed. 824, which is cited by plaintiffs, there was a single question presented, namely, whether the lands held by the plaintiffs were granted by a certain act of Congress for the benefit of the railroad, or reserved to the United States and thus excluded from the grant. It was said that there was a common source of title among the complainants, namely, the action of the land department in opening up the lands for entry; all of the complainants being supposedly entrymen in pursuance of law. In other words, there was there uniformity of title among the complainants. Not so here, for there is the claim as locators under a town site, the claim of locators discarding the town site, the claim as holders under prior deed without tracing title to any location,

and claim by the merest shade of possession only, among which there is such manifest lack of uniformity of title as to put the plaintiffs beyond the scope of the rule. Instead of there being a single question, dependent upon a law of Congress, there arise here as many different questions of fact as there are claimants suing, and the defendant's title depends as well upon the question whether his entry was prior to those of the plaintiffs as upon the regularity thereof. Thus are presented several questions, of both fact and law, for determination.

Nor is the case of Prentice v. Duluth Storage & Forwarding Co., 58 Fed. 437, 7 C. C. A. 293, which on principle is like the Osborne Case, in point. There the court says, at page 441 of 58 Fed., at page 296 of 7 C. C. A.:

"The law and the facts which determine the validity of the title of one such owner also determine the validity of the title of every such owner."

And the court continues that:

"While they are owners in severalty, they are united in interest in the sole question at issue in such a case, the validity of the title of their common grantor."

The titles here depend, on the one hand, upon the act of Congress relative to town sites, as applied to Alaska, and the purchase of land for trade and manufacture, and, on the other, upon the homestead act, also as applied in Alaska, as well as upon a great diversity of facts peculiar to each particular claimant. The case at bar is rather to be controlled by the principle applied in the case of Utterback v. Meeker, 16 Wash. 185, 47 Pac. 428. Manifestly, the attempt here, as there, is to unite in one action several distinct and separate causes existing in favor of distinct parties, whose interests are several, and none of whom has any interest in the causes of the others. Their positions may be similar, arising from the fact that each has an alleged right of action against the same person for causes of some resemblance upon the facts; but this is not sufficient. See authorities cited in the above case. There is, to our minds, an improper joinder of causes of suit in the case at bar.

The second question is whether plaintiffs are possessed of title sufficient upon which to base their action. The general rule, in a suit to quiet title or to remove a cloud, as well as in ejectment, is that the plaintiff must succeed upon the strength of his own title, and not on the weakness of that of his adversary. The very idea of removing a cloud from title presupposes that the plaintiff has a title of some order to defend or to relieve of an alleged or threatened incumbrance or cloud. One in possession merely, without legal or equitable title, cannot maintain a suit to quiet title or to remove a cloud therefrom. 32 Cyc. 1329, 1330. And thus it was held by the Supreme Court, in Stark v. Starr, 6 Wall. 402, 18 L. Ed. 925, that mere naked possession is insufficient upon which to require an exhibition of the estate of the adverse claimant, and this under a statute of Oregon providing that "any person in possession, by himself or his tenant, may maintain" the suit. The court there says:

"His possession must be accompanied with a claim of right, that is, must be founded upon title, legal or equitable, and such claim or title must be

exhibited by the proofs, and, perhaps, in the pleadings also, before the adverse claimant can be required to produce the evidence upon which he rests his claim of an adverse estate or interest."..

Under the statute of Alaska, which goes somewhat further than the Oregon statute, it was held by this court that a valid location of a mining claim, accompanied by possession, was title sufficient upon which to base a suit. Fulkerson v. Chisna Min. & Imp. Co., 122 Fed. 782, 58 C. C. A. 582. And such is undoubtedly the rule as applied in mining claims. That case does not go to the extent, however, that mere possession, unaccompanied by a claim of right under some law or authority, is sufficient within itself.

From the facts as portrayed by the testimony, it appears that some of these complainants have no shadow of claim of title, except mere possession. They have no location under the alleged town site of Haines, no deed from previous holders, if this were sufficient, and no pretense that they are claiming under authority of Congress. It is not even shown that a site has ever been entered for townsite purposes in pursuance of the laws of Congress as extended to Alaska. Section 11, Act March 3, 1891, c. 561, 26 Stat. 1099 (U. S. Comp. St. 1901, p. 1467); 1 Fed. St. Ann. 53. And the extent of the right acquired in alleged pursuance of the town-site statute is that of mere possession only, with the privilege, perhaps, of regularly entering a town site in the future, if the citizens so desire, when their rights will depend upon prior possession. It does not seem to us that such possession exhibits a sufficient equitable title upon which to base a suit to remove a cloud, and we so hold.

Further than this, the defendant's claim for homestead is now pending in the land department, and a judgment of this court upon the validity of such claim would be anticipating the action of the department, which, as a general rule, ought not to be done.

It may be remarked, further, that it appears from the prayer of the plaintiffs and the decree of the court that the scope and purpose of the suit was to determine the extent of the defendant's claim and right, even beyond any effect it might have in clouding the plaintiffs' titles. Thus it appears, by plaintiffs' own showing, and especially by Exhibit 1, which they produced, that Ripinsky's claim extends to the east of the alleged town plat, ranging from 270 to 283 feet, with a width of about 150 feet, and to the west of such plat some 150 feet for the full width of the claim; and yet the decree declares plaintiffs are the owners and entitled to the possession of all lands covered by said claim, except a parcel at the extreme easterly end thereof, 100 by 150 feet in extent, and another parcel within the alleged town site, 25x50 feet in area. This would work a patent injustice to the defendant. But, waiving this, as it could be remedied by a modification of the decree below, the plaintiffs are not entitled to the relief demanded, because of a misjoinder of causes of action and the want of sufficient title upon which to base the action.

The cause, therefore, will be reversed and remanded to the trial court, with directions to dismiss the same.