## BULL v. CAMPBELL.

(Circuit Court of Appeals, Eighth Circuit. June 23, 1915.)

No. 4367.

1. QUIETING TITLE ⟨⟩10—QUESTIONING TITLE OF COMMON GRANTOR.

Where both plaintiff and defendant in a suit to quiet title deraigned title from a common grantor, neither party could question such grantor's title.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 36–42; Dec. Dig. ⟨⟩10.]

2. PUBLIC LANDS ⟨⟩114—GRANT TO RAILROAD—VESTING OF TITLE.

Where Congress granted public lands to a railroad in præsenti, and such road conveyed the lands before execution of its patent, upon execution the patent related back to the date of the grant, and the railroad's conveyance gave title to the grantee.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 314–322; Dec. Dig. ⟨⟩114.

Grants of railroad rights of way in public lands, see note to Taggart v. Great Northern Ry. Co., 129 C. C. A. 362.]

3. ESTOPPEL ⟨⟩35—TITLE BY ESTOPPEL.

Under Rev. Codes Dak. 1877 (Civ. Code) § 633, providing that where a person purports by proper instrument to grant property in fee simple, and subsequently acquires any title or claim thereto, the same passes by operation of law to the grantee or his successor, where a railroad was granted public lands by Congress, and, previous to the issuance to it of the patent thereto, conveyed away such lands, upon issuance of the

patent the road's title thereunder passed by operation of law to its grantee.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 84; Dec. Dig. ⊚⟞35.]

4. JUDGMENT ⊚⟞490—COLLATERAL ATTACK—ORDER OF SERVICE.

Where the Pennsylvania grantee of the mortgagor of lands in the territory of Dakota was sued to foreclose his equity, a decree of foreclosure being entered, in the mortgagee's subsequent suit against him to quiet title to the lands, he could not collaterally attack the decree by claiming that the order of the Dakota court permitting service against him by publication as a nonresident was invalid, as based on an affidavit insufficient under the statute of the territory in force in 1880, providing that, where the person on whom service of summons is to be made cannot after due diligence be found within the territory, and that fact appears by affidavit to the satisfaction of the court, it may order service by publication, since any error in the court's action could only be corrected by appeal.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 926–928; Dec. Dig. ⊚⟞490.]

5. MORTGAGES ⊚⟞427—FORECLOSURE—FAILURE TO JOIN MORTGAGORS AS GRANTEES.

In suit to foreclose a mortgage, plaintiff's failure to join as parties defendant subsequent grantees of the mortgagor did not deprive the court of jurisdiction.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1269, 1272–1287; Dec. Dig. ⊚⟞427.]

6. MORTGAGES ⊚⟞497—FORECLOSURE—FAILURE TO JOIN MORTGAGOR'S GRANTEE.—EFFECT.

Where, in suit to foreclose a mortgage, the plaintiff fails to join as party defendant the mortgagor's grantee, a decree of foreclosure will not extinguish such grantee's right of redemption.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1469, 1471–1473; Dec. Dig. ⊚⟞497.]

7. MORTGAGES ⊚⟞497—FORECLOSURE—CONCLUSIVENESS—FINDING—COLLATERAL ATTACK.

In a mortgagee's suit to quiet title derived from a decree of foreclosure, a finding in such decree that the indebtedness secured by the mortgage was due to the plaintiff could not be attacked.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1469, 1471–1473; Dec. Dig. ⊚⟞497.]

Appeal from the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Action by Hugh Campbell, Jr., against Joseph W. Bull. Decree for plaintiff, and defendant appeals. Affirmed.

The appellee, hereinafter called the plaintiff, filed his bill in the District Court against the appellant, referred to hereafter as the defendant, to determine adverse claims and to quiet his title to a quantity of land in the state of North Dakota. The defendant, asserting title in himself, filed a counterclaim, asking for the same relief against the plaintiff.

The plaintiff claims to be the owner of the lands described in the complaint, deraigning title from one Christopher Stuart Patterson, under whom the defendant also claims title in his counterclaim. The plaintiff deraigns title by reason of a mortgage executed by Patterson and wife on the 2d day of October, 1879, to secure the payment of an indebtedness of $5,000. On August 2, 1880, the plaintiff, being the owner of the indebtedness secured by the mortgage, instituted an action in the district court of Burleigh county, Dakota territory, in which district the lands were situated, for the purpose of fore-

closing the mortgage. The defendants Patterson, in that case, were duly served with process within the territorial jurisdiction of the court, but made no defense, whereupon a decree by default was entered on November 24, 1880. Under this decree a sale of the premises was had, and the plaintiff became the purchaser thereof. This sale was duly confirmed by the court. After these proceedings had been had, it was ascertained by the plaintiff that before the institution of that suit Patterson and wife, the mortgagors, had coveyed these lands to one J. Warren Coulston; but, that fact having been overlooked, Coulston was not made a party defendant in the foreclosure proceedings. Thereupon, on the 9th day of February, 1885, another action of foreclosure was instituted in the district court of the Sixth judicial district of the territory of Dakota against the said Coulston as the sole defendant. Coulston being a nonresident of the territory, and the sheriff having made the return on the summons that he could not be found in the territory, after using due diligence, an affidavit was presented to the judge of the court, which affidavit is as follows:

"Territory of Dakota, County of Burleigh.

"John E. Carland, being duly sworn, on oath says that he is the attorney for the plaintiff in this action; that the said defendant J. Warren Coulston cannot after due diligence be found within this territory; that a summons was duly issued against said defendant and placed in the hands of the sheriff of said county for service, but was returned by said sheriff with his indorsement thereon that said defendant could not be found, which summons, so indorsed, is hereto annexed; that said defendant is a proper party to this action, which relates to real property in this territory; that a cause of action exists against the said defendant in favor of the said plaintiff, as will appear by the complaint of the said plaintiff, a copy of which is hereto annexed; that the affiant is informed and believes that the said defendant, J. Warren Coulston, resides at Philadelphia, in the state of Pennsylvania; that the subject of this action is real property in this territory, and said defendant claims an equity of redemption therein, and the relief demanded is a foreclosure of said equity.

"John E. Carland."

Upon presentation of this affidavit, which was duly verified, the judge of said court, on February 9, 1885, made the following order in that cause:

"It satisfactorily appearing to the judge of said court, by the annexed affidavit of John E. Carland, that the defendant, J. Warren Coulston, cannot after due diligence be found within this territory, and it in like manner appearing that a cause of action exists against the said defendant in favor of the said plaintiff, Hugh Campbell, Jr., and that said defendant is a necessary party in said action, as set forth in his complaint, a copy of which is hereto annexed, and that the subject of the action is real property in this territory, and said defendant claims an equity of redemption therein, and the relief demanded is a foreclosure of said equity, and it further appearing that the place of residence of the said defendant, J. Warren Coulston, is at Philadelphia, in the state of Pennsylvania: On motion of John E. Carland, attorney for the said plaintiff, ordered, that service be made upon said defendant by the publication of a summons in the form of the copy of same hereto annexed, in the Bismarck Weekly Tribune, a newspaper printed and published in Bismarck, Dakota, the same being most likely to give notice to said defendant, once a week for six successive weeks; and it is further ordered and directed that a copy of the summons and complaint be forthwith deposited in the post office, in a registered letter, directed to the said defendant, the person to be served, at Philadelphia, Pennsylvania, his place of residence, and postage paid.

"Dated February 9, 1885.    William H. Francis, Judge."

Due notice was given by publication as required by the order of the court, and also a copy of the summons and complaint sent through the mail, in a registered letter, to the defendant, addressed at Philadelphia, Pa., his place of residence, postage prepaid. In addition to that a copy of the summons and complaint was also served on the defendant at Philadelphia by a disinterested person, over the age of 18 years, and a return of the service made under oath by that person. This last service was made on the 27th day of April, 1885.

On the 8th day of July, 1885, the cause came on for hearing, and proof of the service of process having been presented to the court, a decree was rendered by the court reciting that the said defendant, J. Warren Coulston, had been duly served with process in said action, but having filed no pleading therein, and made no appearance in any manner, either in person or by attorney, was in default of answer, and thereupon the court, having heard the evidence, found the facts necessary to render a decree ordering a sale of the premises by the sheriff of the county, and upon such sale that the defendant's equity of redemption be barred and foreclosed from all equity of redemption and any claim to said mortgaged premises, and every part and parcel thereof, after the delivery of the sheriff's deed. A sale was had, and the plaintiff became the purchaser at that sale for the mortgage debt, and, no redemption having been made from the sheriff's sale, it was approved by the court, and the sheriff directed to execute a deed of conveyance to the plaintiff, which was done.

. Immediately after the delivery of the sheriff's deed to him, the plaintiff entered into possession of the lands, and has held them ever since openly and adversely to the title of any other person from that date to the time this suit was instituted, which was on May 15, 1911. The lands were wild, open, and uninclosed, and situated in a thinly settled district of said county; and he has paid the taxes thereon annually ever since, and ever since the year 1891 has leased and rented said lands for grazing, pasturage, and the making of hay thereon to tenants, who have accounted to him for the value of such use and occupation of said lands. He inclosed all of said lands by a substantial fence showing his occupation; and during all the time he was in such possession neither the mortgagor, Patterson, nor Coulston, nor any one claiming under them, or either of them, has ever been in 'possession of said lands, nor in any wise disturbed, disputed, or protested against plaintiff's possession.

On August 15, 1906, the defendant obtained and caused to be filed for record and recorded in the office of the register of deeds for Burleigh county, N. D., where said lands are situated, a quitclaim deed to these lands from J. Warren Coulston to him, the defendant. The consideration named in the instrument is "the sum of one dollar and other valuable consideration," and it bore date August 10, 1906. At the time of the sale by the sheriff under the foreclosure decree in the action against Coulston, had in the territorial court, the value of the lands did not exceed the sum of $5,433.26; but since then, more than 25 years having elapsed, these lands have greatly increased and appreciated in value, and are now worth at lease $50,000, and he has paid out in taxes on said lands during that time the sum of $3,000.

For the purpose of obtaining possession of these lands, the defendant, on April 23, 1910, purchased from a tenant of plaintiff some lands adjoining the ·lands belonging to the plaintiff, and then pretended to make a lease to one Hubbard, and induced him to commit trespasses upon plaintiff's lands; and the defendant also caused Hubbard, who claimed to be his lessee, to cut the fence which inclosed plaintiff's land and drive some live stock belonging to him thereon, and after the plaintiff had caused Hubbard to leave and repaired the fence, he at various times thereafter again cut the fence and trespassed upon the lands.

The prayer of the bill is the usual one, that the defendant be required to set forth his adverse interest, demand, right, title, and interest, or estate, in and to the premises, in order that they may be justly adjudicated, and that upon a hearing they be declared null and void as against the plaintiff, that the plaintiff's title to the lands be confirmed and quieted against the defendant and all claiming under him, and that he be enjoined and restrained from asserting any claim, right, or title adverse to the plaintiff.

The defendant filed an answer in which he denies plaintiff's right upon several grounds: First, that at the time Patterson executed the mortgage no patent had been issued by the United States to the Northern Pacific Railway Company, under whom he claimed title; second, that the decree against Coulston showed on its face that the court which rendered it was without jurisdiction, because no sufficient affidavit for publication was made showing diligence to serve the defendant within the territory.

He also denied that the plaintiff was in possession, but alleged that the land was open and unoccupied prairie land, used by no one; that the inclosure was not made until May, 1907. He admits that he obtained a conveyance of said lands by proper deed from Coulston; that it was for a valuable consideration, and therefore he is now the lawful owner thereof; that at the time he bought these lands from Coulston none of the land was inclosed nor occupied by any one, except a small tract which was used as a pasture by an adjoining neighbor. He admits that he purchased the east half of section 28, which adjoins some of the lands in controversy, but that he bought it in good faith; that he leased that land to Hubbard; that, the fence between the lands claimed by plaintiff and those which defendant had leased to Hubbard being down, Hubbard's cattle went upon them, but that it was not done for any fraudulent purpose; that he gave permission to Hubbard to put his horses in section 27 of the lands claimed by plaintiff, and had 10 acres of that land broken up and sowed in wheat.

He also filed a counterclaim, in which he claimed to be the owner of these lands by virtue of his purchase from Coulston, and asked for affirmative relief. He also claimed that he is willing and ready to pay all sums of money that were liens on the lands on the 10th day of August, 1906, or are now such liens, by reason of the Patterson mortgage, and he offers to pay all legal taxes that were assessed and levied against said land and paid by the plaintiff, but subject to an accounting and credit on said lands of any and all moneys that have been received by the plaintiff as rents and profits of said lands.

These lands were granted to the Northern Pacific Railway Company by an act of Congress approved July 2, 1864 (13 Stat. 365, c. 217), but the patents were not issued by the government to the railway company until 1895, some time after the lands had been conveyed by the railway company to Patterson's grantor, Stuart, and after Stuart conveyed them to Patterson, and after Patterson executed the mortgage under which plaintiff now claims title, and also after Patterson conveyed them to Coulston. The defendant also claims that the plaintiff was not the owner of the mortgage at the time of the foreclosure proceedings hereinbefore stated.

There was considerable evidence, which it is unnecessary to set out, in view of the conclusions reached by the court, as the main grounds upon which the defendant relies for a reversal of the decree, which was rendered in favor of the plaintiff, are questions of law, which are decisive of this case.

Burt F. Lum, of Minneapolis, Minn., for appellant.

S. E. Ellsworth, of Jamestown, N. D., and Allen C. Orrick, of St. Louis, Mo., for appellee.

Before ADAMS, Circuit Judge, and TRIEBER and REED, District Judges.

TRIEBER, District Judge (after stating the facts as above). The defendant relies for a reversal, upon two grounds: (1) That the mortgage executed by Christopher Stuart Patterson to Robert Campbell, as whose assignee of the mortgage plaintiff claims, was absolutely void, as at the time the railway company conveyed these lands to Stuart, and the subsequent conveyances from Stuart to Patterson and the mortgage by Patterson to Robert Campbell, it had not received a patent from the government for these lands, although they had been granted to and selected by the railway company long before. (2) That the foreclosure proceedings which resulted in the decrees under which the plaintiff claims to have become the purchaser are absolutely void—the first, against Patterson, because Coulston was not made a party defendant; and the second, against Coulston, because he had not been properly served with process to give the court, which rendered the decree, jurisdiction to render it.

[1] As to the first proposition, a complete answer is that both parties claim title to the land from a common grantor .Patterson. This being the case it is not competent for either party to question the title of the grantor. When both parties assert title from a common grantor, and no other source, neither can deny that such common grantor had a valid title when he executed his conveyance. Robertson v. Pickrell, 109 U. S. 608, 615, 3 Sup. Ct. 407, 27 L. Ed. 1049.

[2] But, aside from that, the title of the Northern Pacific Railway Company to the lands granted by the act of Congress of July 2, 1864, was in præsenti, and upon execution of the patent it related back to the date of the grant. That was expressly determined in St. Paul & P. R. R. Co. v. Northern Pacific Ry. Co., 139 U. S. 1, 11 Sup. Ct. 389, 35 L. Ed. 77.

[3] In addition to that the laws of the territory of Dakota, at the time these conveyances were made, provided:

"Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title or claim of title thereto, the same passes, by operation of law, to the grantee, or his successors." Rev. Codes Dakota 1877 (Civil Code) § 633.

Was the decree of foreclosure under which plaintiff claims title absolutely void, so as to subject it to collateral attack? There were two separate decrees of foreclosure, under both .of which plaintiff claims title to the lands in controversy, having become the purchaser of them at both sales. The first action was against the mortgagor, Patterson, and his wife only. Both of these defendants were served with process in the territory of Dakota and a proper decree of foreclosure rendered. After the sale and purchase by the plaintiff under this decree it was discovered that Patterson had conveyed these lands, after the execution of the mortgage, but prior to the institution of the first foreclosure suit, to one J. Warren Coulston, under whom defendant claims title by purchase. Coulston not having been made a party to the foreclosure proceedings, an action to foreclose his equity of redemption was instituted by the plaintiff as mortgagee, and also as the purchaser of the lands under the former decree. A decree of foreclosure was rendered in that case, and upon a sale of the lands under the last decree they were purchased by the plaintiff.

[4] It is claimed that, Coulston being a nonresident of the territory of Dakota, residing in the city of Philadelphia, state of Pennsylvania, the order of the judge of the district court of Burleigh county, in which the cause was pending, was a nullity, because the affidavit upon which the order was made did not comply with the terms of the statutes of the territory authorizing an order for constructive service. The statutes of the territory. of Dakota then in force on that subject, were as follows:

"Where the person on whom the service of the summons is to be made cannot, after due diligence, be found within the territory, and that fact appears by affidavit to the satisfaction of the court or a judge thereof, and it in like manner appears that a cause of action exists against the defendant in respect ·to whom the service is to be made, or that he is a proper party to an action relating to real property in this territory, such court or judge may grant an order that the service be made by the publication of a summons in either

of the following cases: \* \* \* (4) Where the subject of the action is real or personal property in this territory, and the defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partly in excluding the defendant from any interest or lien therein. (5) \* \* \* When publication is ordered, personal service of a copy of the summons and complaint, out of the territory, is equivalent to publication and deposit in the post office. The defendant against whom publication is ordered, or his representatives, on application and sufficient cause shown at any time before judgment, must be allowed to defend the action; and, except in an action for divorce, the defendant against whom publication is ordered, or his representatives, may, in like manner, upon good cause shown, be allowed to defend after judgment, or at any time within one year after notice thereof, and within seven years after its rendition, on such terms as may be just; and if the defense be successful, and the judgment or any part thereof have been collected, or otherwise enforced, such restitution may thereupon be compelled as the court directs; but the title to property sold under such judgment to a purchaser in good faith shall not be thereby affected. \* \* \*" Rev. Codes Dakota 1877 (Code of Civil Proc.) § 104.

It is claimed that the affidavit, which has been set out in the statement of facts, was void because it failed to state what diligence had been used to obtain service on Coulston within the territory, and that he was not to be found in the territory. It may be conceded that, upon an appeal from a decree rendered upon such an affidavit, it would be declared insufficient to warrant an order of the court for substituted service, a question not before us, and therefore not determined; but it would not follow that a decree based upon such an affidavit and order would make the decree absolutely void, so that it could be attacked in a collateral proceeding. No authority has been called to our attention in the very elaborate brief of counsel for defendant, nor in the oral argument, to any decision of the Supreme Court of the territory of Dakota, or the state of North Dakota, where such a judgment or decree has been declared void when collaterally attacked, nor have we been able to find any such authority. The court which acted on the affidavit held it sufficient, and if it erred the error could only be corrected by appeal. The decree cannot be attacked collaterally. Applegate v. Mining Co., 117 U. S. 255, 6 Sup. Ct. 742, 29 L. Ed. 892; Pennoyer v. Neff, 95 U. S. 714, 721, 24 L. Ed. 565.

In the last-cited case this identical question was before the court under a statute of Oregon, which is practically the same as that of the territory of Dakota, and where the affidavit upon which the order for substituted service was made was almost identical with that in this case. The court there said:

"There is some difference of opinion among the members of this court as to the rulings upon these alleged defects. The majority are of opinion that, inasmuch as the statute requires, for an order of publication, that certain facts shall appear by affidavit *to the satisfaction of the court or judge*, defects in such affidavit can only be taken advantage of on appeal, or by some other direct proceeding, and cannot be urged to impeach the judgment collaterally." (The words in italics are in the opinion itself.)

The same conclusion was reached in Marx v. Ebner, 180 U. S. 314, 319, 21 Sup. Ct. 376, 45 L. Ed. 547, where the affidavit was almost identical with the one in this case, and the language of the statute practically the same. It was there held:

225 F.– 59

"We think, where the affidavit shows that the defendant is a nonresident of the district and that personal service cannot be made upon him, and the marshal, or other public officer to whom the summons was delivered, returns it with his indorsement that after due and diligent search he cannot find the defendant, such proof is sufficient to give jurisdiction to the court or judge to decide the question. It is not to be expected that positive proof that the defendant cannot be found within the state or district will always be attainable. Facts must appear from which it will be a just and reasonable inference that the defendant could not after due diligence be found, and that due diligence has been exercised, and we think such an inference is reasonable when proof is made that the defendant is a nonresident of the state, and there is an affidavit that personal service cannot be made upon him within its borders, and there is a certificate of the marshal such as appears in this case."

To the same effect are Cohen v. Portland Lodge, 152 Fed. 357, 81 C. C. A. 483; Bower v. Stein, 177 Fed. 673, 101 C. C. A. 299.

[5, 6] The original decree in the Patterson case is also attacked upon the ground that Coulston, his grantee, was not made a party thereto. But the failure to make subsequent grantees parties, especially when they are not in possession, would not deprive the court of jurisdiction. The only effect of such an omission would be that the right of redemption of the grantee remains in existence.

[7] It is also claimed that the plaintiff, Hugh Campbell, Jr., was not the owner of the mortgage; but the finding of the court, as recited in the decree, that the indebtedness secured by the Patterson mortgage was due to the plaintiff in that action, is conclusive in a collateral proceeding. No authorities need be cited on that proposition.

Other contentions have been made and carefully examined, but they are too frivolous to require notice. The conclusions reached make it unnecessary to determine the question of plaintiff's title by prescription, and the alleged laches of the defendant and his grantor. Upon the whole bill the defendant has failed to show any equities which can appeal to the conscience of a court of equity. His grantor had actual notice of the pendency of the foreclosure proceedings. He made no defense. For over 20 years he took no steps to have the decree reviewed, as could have been done under the statutes of the territory of Dakota. He paid no taxes on the lands, and, as appears from the deed to the defendant in this case, he purchased it for a nominal consideration, laboring, no doubt, under the impression that the decree could be set aside upon payment of the mortgage debt; the lands, in the meantime, having increased tenfold in value.

The decree of the District Court was right, and is affirmed.