BUCHANAN v. ST. LOUIS & M. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1918.)

No. 5084.

1. RAILROADS ⬤�ா72(7)—CONVEYANCE OF LAND—CONSTRUCTION—REVERSION.
   A condition in a deed to a railroad company that, if the railroad be not built, etc., the lands should revert to the grantors, etc., held a condition subsequent, under which title passed to the company, subject to a right of forfeiture that might be asserted in case of breach of condition.

2. TAXATION ⬤�ா679(4)—SALE OF LAND—TITLE OF STATE—SALE TO RAILROAD COMPANY—REMISSION OF TAX.
   Where the former owner of Arkansas lands sold to the state for taxes granted them to a railroad company in July, 1873, by deeds containing conditions subsequent providing for forfeiture in case the railroad should not be built, held that, under the Arkansas acts of April 8, 1869 (Acts 1868–69, p. 130), of March 27, 1871 (Acts 1871, p. 199), and of April 21, 1873 (Acts 1873, p. 172), the state's title to the land did not pass to the railroad company, and so no title reverted to the grantor because of breach of the condition.

3. TAXATION ⬤➾679(4)—SALE TO STATE—TITLE—GRANT TO RAILROAD COMPANY.
   Where lands sold to the state for taxes were granted by the former owner to a railroad company, held that, under the Arkansas acts of April 8, 1869 (Acts 1868–69, p. 130), and April 27, 1873 (Acts 1873, p. 172), no title passed to the railroad company which could revert to the former

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

owner for breach of condition subsequent; the acts providing merely for remission of taxes, leaving the title where it was, and there being no showing that the state released the lands.

4. QUIETING TITLE ⟨⟩10(1)—RELIEF.

In order to have title quieted, one must have some title, and the suit cannot be based on the weakness of his adversary's title.

5. QUIETING TITLE ⟨⟩10(2)—SUITS—TITLE OF COMMON GRANTOR.

Where both parties to a suit to quiet title claim from a common grantor, neither can question that title.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by R. E. Buchanan, trustee, against the St. Louis & Memphis Railroad Company and others. A motion to dismiss the bill was sustained, and plaintiff appeals. Affirmed.

W. G. Cavett, of Memphis, Tenn. (R. T. Simpson, of Florence, Ala., and Manning & Emerson, of Little Rock, Ark., on the brief), for appellant.

George H. Williams, of St. Louis, Mo., Allen Hughes, of Memphis, Tenn., and W. H. Woodward, of St. Louis, Mo. (R. B. Campbell, of Helena, Ark., W. M. Allen, of Springfield, Ill., J. D. Block, of Paragould, Ark., Charles T. Coleman, of Little Rock, Ark., S. W. Ogan, of Wynne, Ark., and C. L. Marsilliot, of Memphis, Tenn., on the brief), for appellees.

Before HOOK and STONE, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. By this suit the plaintiff sought to quiet his title to about 40,000 acres of land in Arkansas. A motion to dismiss the bill was sustained, and plaintiff below appeals. The question involved is whether the bill states a cause of action. There are two separate tracts of land involved, and the decision as to them depends on somewhat different facts.

One tract of land, which Thomas H. McCray assumed to convey to the St. Louis & Memphis Railroad Company, will be referred to as the McCray land, and the other tract, which Isaac Saffron assumed to convey to the railroad company, will be referred to as the Saffron land.

In his bill plaintiff sets forth a chain of title to these lands. He alleges a conveyance of the McCray lands from the United States to the state of Arkansas, and conveyances from the state to various persons other than McCray. He then alleges the assessment of taxes for some of the years between 1865 to 1871, inclusive, against these lands, delinquency in payment of the taxes, a sale of the land for the taxes, and that the lands were bid in and purchased by the state of Arkansas, and that the title to these lands prior to and in 1872 was in the state of Arkansas. It is also averred that McCray, prior to July 15, 1873, claimed, subscribed, and donated these lands to the railroad company, and it is then stated that McCray executed a deed for these lands to the railroad company, which was dated July 12, 1873, and filed for record on July 15, 1873. This deed recited a consideration of $2 per acre, one-fourth to be paid in first mortgage bonds, and the balance in capi-

tal stock of the railroad company, and in consideration of the building and completion of the railroad in 3 years. Further provisions in the deed read as follows:

"Provided, said railroad shall be built and completed within three years after date hereof."

"That, if the said railroad be not built and completed within three years from date hereof, said lands shall revert to us, our heirs, administrators, and assigns, and this deed to be void."

And in the habendum clause appeared this provision:

"To have and to hold the same unto the said St. Louis & Memphis Railroad Company, and unto their assigns forever, with all the appurtenances thereunto belonging: Provided, said railroad shall be built and completed within three years after date hereof. And we hereby covenant with the said St. Louis & Memphis Railroad Company that we will forever warrant and defend the title to said lands against all claims whatsoever, subject only to the condition that if the said railroad be not built and completed within three years from date hereof, said lands shall revert to us, our heirs, administrators, and assigns, and this deed to be void."

[1, 2] It is alleged that the railroad company did not build and complete the railroad within 3 years nor since. Plaintiff alleges that in 1910, 37 years after McCray's deed to the railroad company, the heirs of McCray executed deeds to grantees through whom plaintiff now claims title, and it is claimed that the lands have been unoccupied up to the time of filing this suit. Plaintiff claims that title is shown in him, as to the McCray lands, by these allegations because a forfeiture was declared of the condition subsequent contained in McCray's deed to the railroad company and he is therefore entitled, not only to the title that McCray conveyed and of which plaintiff claimed a reversion, but also to an independent title which he says the railroad company acquired after it received that deed, and which also reverts to the plaintiff because of the McCray deed.

Taking up these claims of reversion separately, it was held by this court in Rannels v. Rowe, 145 Fed. 296, 74 C. C. A. 376, and in Bryan v. Bliss-Cook Oak Co., 178 Fed. 217, 101 C. C. A. 577, under deeds essentially similar that the conditions recited in the deeds were conditions subsequent, and that title passed to the grantee subject to a right of forfeiture that might be asserted in case of a breach of condition, such as a failure to build and complete the railroad in the time limited. McCray, however, is shown by plaintiff's bill to have been a stranger to the title at the time he conveyed, and, as he conveyed no interest in the lands, none could revert to his heirs, unless, as plaintiff claims, his grantee acquired a new title, and this reverted to McCray's heirs. This claim of title depends on the construction of certain statutes of Arkansas.

By an act of the Legislature approved April 8, 1869 (Acts Ark. 1868–69, p. 130), it was provided:

"That whenever any person having title to, or being the owner of, any lands which have been or may be stricken off to the state, or forfeited for nonpayment of taxes, shall donate or subscribe the same in aid of the construction of any railroad, and the same shall be reported to the auditor of public accounts, as provided in section two hereof, the auditor shall grant his certificate, as in case of redemption, and thereupon all taxes and claims of the state

on account of nonpayment of taxes, on each tract of land so subscribed or donated, shall be remitted and discharged: Provided, that a lien shall exist in favor of the state for the taxes hereby remitted, which may be enforced, and said taxes collected according to law, if such railroad shall not be completed through the county in which, or nearest to which, such lands are selected, within five years from the date of such subscription or donation."

The railroad company was required to furnish annually to the auditor a list of lands acquired by grant, donation, or subscription, and these lands were not to be listed nor subject to taxation until conveyed to actual purchasers by the railroad company.

In 1871 by an act approved March 27, 1871 (Acts Ark. 1871, p. 199), it was made the duty of the president and secretary of any railroad company having lands subscribed and donated to it to certify under oath to the auditor that these lands were subscribed to the companies in good faith, and that there was no arrangement or understanding that the subscribers should have the right to withdraw such lands at any time or for any purpose. Deeds to all lands then subscribed that were to be certified to the auditor were required to be filed for record with the proper county officer by July 1, 1871, and the auditor was then to classify as subject to taxation laws the lands as to which no such additional certificate had been made. By a further act of the Legislature approved April 21, 1873 (Acts Ark. 1873, p. 172), it was recited that gross frauds were being perpetrated on the revenues of the state by the failure of railroad companies to comply with the laws relating to lands subscribed to them and in their exemption from taxation, and it was made the duty of the county clerks to examine the records of deeds by June 1, 1873, and to make out therefrom a list of lands that had been subscribed or donated to any railroad company by deed filed for record on or before July 1, 1871, as required by the act of 1871, and to forward such certified list to the auditor by June 1, 1873. Sections 2 and 3 of the act are as follows:

"Sec. 2. On or before the 1st day of June, 1873, the auditor of the state shall make out a correct list of all the lands and town lots claimed to be exempt from taxation by the various railroad companies, making a separate list for each company; and he shall, on or before the 10th day of June, 1873, or as soon thereafter as such lists shall have been received from the county clerks, proceed to compare the list made out by himself with the list forwarded to his office by the county clerks in accordance with the provisions of this act, and shall forthwith classify all such lands and lots, and all such lands and lots as shall be claimed by any railroad company as exempt from taxation by reason of having been donated or subscribed to such railroad company, and for which it shall be found no deed has been filed for record with the proper officer of the county in which such lands are situated, as is required by section 2 of an act entitled 'An act to protect the state revenue,' approved March 27, 1871, shall be made subject to the revenue laws; and such lands and lots as appear to have been forfeited to the state for nonpayment of tax shall be so classed and shall be sold or otherwise disposed of as is or may be provided by law for the disposal of forfeited lands; and any deed of quitclaim or release by which the claim of the state to such lands or lots, for taxes due thereon, may have been relinquished in favor of any railroad company, shall be cancelled and annulled; and the auditor of the state shall so declare, and shall notify any railroad company claiming such land of his action in the premises; and such lands and lots as do not appear to have been forfeited shall be listed for taxation as other lands are listed; and the auditor of state shall notify the clerk of the county in which such lands and lots

are situated, and he shall place such lands and lots on the tax books of the county, and shall charge the same with all the taxes due thereon; and the collector of said county shall, at the next annual collection of taxes thereafter, collect all taxes due on said lands and lots, but no penalty shall be added for the nonpayment of any taxes up to date of such collection.

"Sec. 3. If any person or persons owning or claiming to own any of the lands or lots mentioned in the preceding section of this act, shall donate or subscribe the same as stock to any railroad company chartered or organized according [to] the laws of this state, and shall subscribe or donate them by deed to such railroad company, and shall file such deed for record with the proper officer of the county in which such lands are situated on or before the 15th day of July, 1873, then the state shall release all the claim which it may have to said lands or lots on account of taxes, as is now provided by law in such cases; and the laws of this state in relation to lands subscribed or donated to railroad companies shall be in force as to such lands; and all such lands or lots as may be classed as forfeited lands or lots, and which any person or persons owning or claiming to own them shall elect to redeem them instead of donating or subscribing them to any railroad company, such lands or lots may be redeemed as is now or may be provided by law for the redemption of forfeited lands on or before the said 15th day of July, A. D. 1873, after which time if not then redeemed or conveyed to any railroad company they shall be sold by the auditor at the next regular sale of forfeited lands thereafter, or otherwise disposed of according to law. And the county clerks of the several counties in this state shall, on the said 15th day of July, 1873, make out and forward to the auditor of the state a correct list of such lands and lots as may appear from deeds then on file in the proper office for record to have been subscribed or donated to any railroad company."

The plaintiff claims that under the provisions of section 3, McCray, although he had no title to these lands, could claim to own them, and did so claim, and that he donated and subscribed them to the railroad company by his deed filed on July 15, 1873, and thereupon the state granted to the grantee named in McCray's deed its title which it had theretofore acquired by reason of the purchase for taxes, and that this title reverted to McCray's heirs when a forfeiture of the estate conveyed by McCray to the railroad company was declared for breach of the condition subsequent, and therefore he is now vested with sufficient title to maintain this suit.

It is urged by appellees that the Legislature of Arkansas, under the restrictions of the state Constitution, had no power either to convey lands that the state had purchased for taxes or to remit or release such taxes, except upon full payment of the amount due. We do not find it necessary to decide this question, for, if this legislation did not purport to convey title to the lands to the railroad company, the plaintiff cannot have acquired any title by claim of a reversion of estate.

Did the acts of the Legislature grant the state's title to the railroad company? The privileges granted by section 3 of the act of 1873 are limited to lands mentioned in section 2 of the act. The lands mentioned in section 2 are those listed by county clerks on or before June 1, 1873, from their records of deeds filed on or before July 1, 1871, and the lands listed by the auditor on or before June 1, 1873, as claimed to be exempt by the railroad companies. The purpose of the act was to limit the list of exempted lands to those in these two classes, but a provision was made that if land appeared on the auditor's list, and no deed thereto had been filed by July 1, 1871, it could still have the benefits of the act, if the owner or claimant donated or subscribed it to a

railroad company and filed the deed for record by July 15, 1873. It was not intended that the door should be opened, so that any lands could be subscribed or donated to railroads, and thus be exempted from taxation; but the purpose was to leave the door ajar for such lands as the auditor had listed on or before June 1, 1873, even though the deeds thereto had not been filed by July 1, 1871, and to close it to all others. The plaintiff does not allege that the McCray lands were so listed by either the county clerk or by the auditor and as the deed by McCray was not made until July 12, 1873, neither the county clerk nor the auditor was authorized to enter it upon their list and the railroad companies were not authorized to make the verified statement required by section 2 that the McCray land was claimed as exempt on or before June 1, 1873, because it had not been conveyed and the presumption is that the officers all observed the requirements of the statutes, and hence it does not appear that these lands were subject to the act of 1873.

[3, 4] There is another reason why this act did not confer any title in the railroad company. The terms of this act provide that the state shall release all the claim it may have to the lands on account of taxes "as is now provided by law in such cases." The law thus referred to is found in the act of 1869 heretofore quoted, and provides merely for the remission or discharge of the taxes to be evidenced by the auditor's certificate "as in case of redemption" and thus left the title where it happened to rest before the issuance of such certificate.

There is no allegation that the state of Arkansas ever executed a release or conveyance of these lands to plaintiff or his predecessor in title. It therefore appears that the plaintiff has no title, if a forfeiture were properly declared, except such title as McCray had when he made his deed to the railroad company, and as he had none the plaintiff acquired none. He does not allege that he has possession of the land. In order that one may have his title quieted to lands he must have some title. Under the liberal modern statutes broadening the remedy one cannot "have a cloud removed from a title which has no existence." The suit cannot be based alone upon the weakness of an adversary title. Dick v. Foraker, 155 U. S. 404, 415, 15 Sup. Ct. 124, 39 L. Ed. 201; Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Stark v. Starr, 6 Wall. 402, 18 L. Ed. 925; Guarantee Trust & Safe Deposit Co. v. Delta & Pine Land Co., 104 Fed. 5, 43 C. C. A. 396; Ripinsky v. Hinchman, 181 Fed. 786, 105 C. C. A. 462; Mason v. Gates, 82 Ark. 294, 102 S. W. 190; Chapman & Dewey Land Co. v. Bigelow, 77 Ark. 338, 92 S. W. 534; Reynolds v. Snyder, 121 Ark. 33, 180 S. W. 752, 183 S. W. 979; Greer v. Vaughan, 128 Ark. 331, 194 S. W. 232; 32 Cyc. 1329, 1330.

[5] An exception to this rule exists where suit is brought to quiet title and both parties claim title alone from a common source. In that case neither party can question the title of the common grantor. Bull v. Campbell, 225 Fed. 923, 141 C. C. A. 47; Wood v. Freeman-Smith Lumber Co., 109 Ark. 499, 160 S. W. 396; 2 Gr. on Ev. § 307; English v. Otis, 125 Iowa, 555, 101 N. W. 293; Howard v. Twibell, 179 Ind.

67, 100 N. E. 372, Ann. Cas. 1915C, 93; Phillips v. Menotti, 167 Cal. 328, 139 Pac. 796; People's Bank v. West, 67 Miss. 729, 7 South. 513, 8 L. R. A. 727.

This suit is not within the exception because the plaintiff shows that the state of Arkansas was the owner of these lands when McCray made his deed to the railroad company, and that the defendants claim the lands through tax sale proceedings by the state and through deeds from other persons than McCray or his successors in interest.

The plaintiff's claim to the Saffron land rests upon a chain of conveyances from the United States to the state of Arkansas, by the state to Jones, by Jones to Ford, and by Ford to Saffron. The deed to Saffron is dated January 1, 1873. He alleges a deed from Saffron to the railroad company dated July 11, 1873, and filed for record on July 14, 1873. A deed from Saffron to plaintiff's predecessors in title was made November 22, 1910. The deed from Saffron to the railroad company contained the same conditions that were contained in the McCray deed. The plaintiff makes the same allegations as to the Saffron land that have been referred to as made with reference to the McCray land, to the effect that the lands had been sold for taxes and purchased by the state and that title was in the state of Arkansas in 1872. The claim of title to these lands is based upon the same contention that has been stated with reference to the McCray lands, that by reason of a donation and subscription of them by Saffron to the railroad company the state then granted its title to the railroad company, and plaintiff is entitled to the reversion of this title for condition broken in the Saffron deed. Our decision that no title passed from the state to the railroad company as to the McCray lands also determines that no title passed from the state to the railroad company as to the Saffron lands and for the same reasons. As it is further shown that Saffron had lost his title in 1872 to the state of Arkansas, his deed to the railroad company in 1873 conveyed nothing and the claim of a reversion for condition broken, if sustained, can restore no title to plaintiff, and he has no standing to ask to have his title quieted.

The defendants who claim the Saffron lands are also shown to be claimants under the tax sale proceedings of the state, and under deeds which are not derived from Saffron's claim of title, and hence they do not claim from a common source with the plaintiff.

The conclusions announced dispose of the case, and render unnecessary the discussion of other questions argued.

The decree will be affirmed.